Case No. 21-16929

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FRANCISCO DUARTE,
Plaintiff/Appellant,

v.

CITY OF STOCKTON, *et al.*,
Defendants/Appellees.

On Appeal from the United States District Court
For the Eastern District of California, Sacramento Division
Case No. 2:19-cv-00007-MCE-CKD
The Honorable Morrison C. England

**DEFENDANTS/APPELLEES' ANSWERING BRIEF**

DANA A. SUNTAG (California Bar No. 125127)
dsuntag@herumcrabtree.com
JOSHUA J. STEVENS (California Bar No. 238105)
jstevens@herumcrabtree.com
AMY N. SEILLIERE (California Bar No. 335694)
aseilliere@herumcrabtree.com
HERUM\CRABTREE\SUNTAG
A CALIFORNIA PROFESSIONAL CORPORATION
5757 Pacific Avenue, Suite 222
Stockton, California 95207
Telephone: (209) 472-7700

Attorneys for All Defendants/Appellees

# TABLE OF CONTENTS

I. STATEMENT OF JURISDICTION ......................................................1

II. ISSUES PRESENTED .......................................................................1

III. STATEMENT OF THE CASE ..........................................................2

    A.    Overview ....................................................................2

    B.    Facts ..........................................................................4

    C.    Procedural History ...................................................8

IV. SUMMARY OF ARGUMENT ..........................................................10

V. THE STANDARD OF REVIEW ........................................................13

VI. STANDARDS GOVERNING APPLICATION OF
THE *HECK* BAR .............................................................................13

    A.    The Historical Context and Purpose of the *Heck* Bar ..............13

    B.    Fundamental Aspects of the *Heck* Bar ....................................15

VII. PLAINTIFF'S CLAIMS ARE BARRED BY *HECK* ........................17

    A.    The *Heck* Bar Applies to No Contest Pleas ............................17

    B.    Plaintiff's Claims Are Not
Divisible From His Underlying Arrest ....................................20

    C.    None of the Criteria Required to
Remove the *Heck* Bar Are Present Here .................................27

    D.    It is Undisputed Plaintiff Pled No
Contest and the Court Accepted that Plea ..............................31

    E.    The Better-Reasoned Decisions From Other Circuits
that Applied the *Heck* Bar to Pretrial Diversion Cases
Considered Culpability and Service of a
Sentence as Factors ................................................................35

i

F.  By Contrast, the Sixth, Eighth, Tenth, and
    Eleventh Circuits Did not Analyze this Issue
    With the Same Level of Due Consideration ...........................40

G.  Not Having Access To Federal Habeas Is Irrelevant ..............43

VIII. THIS COURT SHOULD AFFIRM
     DISMISSAL OF PLAINTIFF'S *MONELL* CLAIMS ......................47

A.  There is No *Monell* Liability if There is
    No Underlying Constitutional Violation .................................47

B.  The SPD is Not a "Person" For Purposes of
    42 U.S.C. § 1983 ......................................................................48

C.  Plaintiff Failed to Allege a Proper *Monell*
    Claim Against the City or the
    SPD............................................................................................52

IX. THIS COURT SHOULD DISREGARD THE
    INSTITUTE FOR JUSTICE'S PROPOSED
    AMICUS BRIEF ..................................................................................55

X.  CONCLUSION .....................................................................................56

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Anderson v. Warner,*
    451 F.3d 1063 (9th Cir. 2006)................................................................. 54

*Arroyo v. Starks,*
    589 F.3d 1091 (10th Cir. 2009)............................................................. 42

*Bagley v. City of Sunnyvale,*
    2017 U.S. Dist. LEXIS 9948 (N.D. Cal. 2017)....................................... 53

*Barry v. Bergen County Probation Dep't,*
    128 F.3d 152 (3rd Cir. 1997)............................................................ 32, 33

*Board of County Comm'rs v. Brown,*
    520 U.S. 397 (1997) ............................................................................. 54

*Box v. Miovas,*
    2015 U.S. Dist. LEXIS 55575 (N.D. Cal. 2015)..................................... 48

*Canton v. Harris,*
    489 U.S. 378 (1989) ............................................................................. 54

*Castellano v. Fragozo,*
    352 F.3d 939 (5th Cir. 2003)................................................................. 38

*City of Los Angeles v. Heller,*
    475 U.S. 796 (1986) ............................................................................. 48

*Davis v. City of Ellensburg,*
    869 F.2d 1230 (9th Cir. 1989)............................................................... 54

*DeLeon v. City of Corpus Christi,*
    488 F.3d 649 (5th Cir. 2007)................................................................. 39

*Deloney v. County of Fresno,*
    2018 U.S. Dist. LEXIS 115617 (E.D. Cal. 2018) ................................... 52

*Dow v. Circuit Court of the First Circuit,*
    995 F.2d 922 (9th Cir. 1993)................................................................. 32

*Entzi v. Redmann,*
    485 F.3d 998 (8th Cir. 2007) ................................................................. 44

*Felipe v. Surgees,*
    2009 U.S. Dist. LEXIS 12146 (E.D. Cal. 2009) ...................................... 14

*Fetters v. County of Los Angeles,*
    243 Cal. App. 4th 825 (2016) ............................................................ 44, 46

*Flagg Bros. v. Brooks,*
    436 U.S. 149 (1978) .............................................................................. 47

*Foley v. Kaldenbach,*
    2018 U.S. Dist. LEXIS 3217 (S.D. Cal. 2018) ........................................ 47

*Fuller v. Dept. of Transp.,*
    38 Cal. App. 5th 1034 (2019) ............................................................ 19, 20

*Gilles v. Davis,*
    427 F.3d 197 (3d Cir. 2005) ......................................................... 37, 38, 44

*Guerrero v. Gates,*
    442 F.3d 697 (9th Cir. 2006) ................................................................. 45

*Harbridge v. Pasillas,*
    2011 U.S. Dist. LEXIS 5691 (E.D. Cal. 2011) ........................................ 26

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ........................................................................ *passim*

*Hervey v. Estes,*
    65 F.3d 784 (9th Cir. 1995) ................................................................... 49

*Hooper v. Cty. of San Diego,*
    629 F.3d 1127 (9th Cir. 2011) ........................................................... 24, 25

*Hovd v. Hayward Unified Sch. Dist.,*
    74 Cal. App. 3d 470 (1977) ................................................................... 51

*Jackson v. City of Bremerton,*

   268 F.3d 646 (9th Cir. 2001) .................................................................... 48

*Johnson v. City of Seattle,*

   474 F.3d 634 .......................................................................................... 48

*Johnson v. Valley Med. Moorpark Lab Clinic & Valley Med. Hosp.*

   2013 U.S. Dist. Lexis 202313 (E.D. Ar. 2013) ......................................... 51

*Karim-Panahi v. Los Angeles Police Dep't,*

   839 F.2d 621 (9th Cir. 1988) .......................................................... 49, 50, 51

*Kastner v. Texas,*

   332 F. App'x 980 (5th Cir. 2009) ............................................................. 40

*Kon v. City of Los Angeles,*

   49 Cal. App. 5th 858 (2020) ..................................................................... 24

*Lambert v. Blodgett,*

   393 F.3d 943 (9th Cir. 2004) ..................................................................... 4

*Langley v. Twin Towers Corr. Facility,*

   2021 U.S. Dist. LEXIS 253169 (C.D. Cal. 2021) ..................................... 49

*Larin v. Cty. of Santa Barbara,*

   2016 U.S. Dist. LEXIS 188187 (C.D. Cal. 2016) ..................................... 47

*Long v. City & County of Honolulu,*

   511 F.3d 901 (9th Cir. 2007) .................................................................... 48

*Lyall v. City of Los Angeles,*

   807 F.3d 1178 (9th Cir. 2015) .................................................................. 45

*McClish v. Nugent,*

   483 F.3d 1231 (11th Cir. 2007) ................................................................ 43

*McDonough v. Smith,*

   ___ U.S. ___, 139 S. Ct. 2149 (2019) ................................................. 16, 56

*Mehmood v. Delaney,*
 2017 U.S. Dist. LEXIS 79903 (E.D. Cal. 2017) ........................................ 46

*Mitchell v. Morton Cty.,*
 28 F.4th 888 (8th Cir. 2022) ................................................................. 41, 42

*Monell v. Dept. of Social Servs. of the City of New York,*
 436 U.S. 658 (1978) ...................................... 1, 2, 3, 8, 9, 12, 13, 47, 48, 54

*Moschref v. Stratton,*
 697 Fed. App'x 532 (9th Cir. 2017) ........................................................ 48

*Muhammad v. Garrett,*
 66 F. Supp. 3d 1287 (E.D. Cal. 2014) ...................................................... 24

*Muric-Dorado v. Dzurenda,*
 2019 U.S. Dist. LEXIS 205353 (D. Nev. 2019) ....................................... 46

*Nonnette v. Small,*
 316 F.3d 872 (9th Cir. 2002) ............................................................... 45, 46

*North Carolina v. Alford,*
 400 U.S. 25 (1970) ................................................................................... 17

*Nuno v. San Bernardino County,*
 58 F. Supp. 2d 1127 (C.D. Cal. 1999) ..................................... 18, 19, 22, 23

*Oceanside Organics v. Cty. of San Diego,*
 341 F. Supp. 3d 1129 (S.D. Cal. 2018) ..................................................... 47

*Ove v. Gwinn,*
 264 F.3d 817 (9th Cir. 2001) ................................................................... 18

*Oviatt v. Pearce,*
 954 F.2d 1470 (9th Cir. 1992) ................................................................. 54

*Patsy v. Board of Regents of Fl.,*

    457 U.S. 496 (1982) ................................................................. 14

*People v. Melone,*

    71 Cal. App. 2d 291  (1945)..................................................... 33

*People v. Olguin,*

    119 Cal. App. 3d 39, 44 (1981)................................................ 23

*People v. Schwarz,*

    79 Cal. App. 561 (1926)........................................................... 33

*People v. Wilkins,*

    14 Cal. App. 4th 761 (1993)..................................................... 23

*Preiser v. Rodriguez,*

    411 U.S. 475 (1973) ................................................................. 14

*Radwan v. County of Orange,*

    519 F. App'x 490 (9th Cir. 2013) ............................................ 18

*Randell v. Johnson,*

    227 F.3d 300 (5th Cir. 2000).................................................... 44

*Roberts v. City of Fairbanks,*

    947 F.3d 1191 (9th Cir. 2020).................................... 16, 27, 28, 29, 30, 31

*Roesch v. Otarola,*

    980 F.2d 850 (2d Cir. 1992) ............................................... 36, 37

*Rose v. Lundy,*

    455 U.S. 509 (1982) ................................................................. 14

*S.E. v. Grant County Bd. of Educ.,*

    544 F.3d 633 (6th Cir. 2008).................................................... 41

*Sanford v. Motts,*

    258 F.3d 1117 (9th Cir. 2001)............................................ 24, 25

*Schilling v. White,*
  58 F.3d 1081 (6th Cir. 1995) .................................................................. 44

*Serna v. City of Bakersfield,*
  2019 U.S. Dist. LEXIS 83826 (E.D. Cal. 2019) ................................ 53, 54

*Shaw v. California Dep't of Alcoholic Bev. Control,*
  788 F.2d 600 (9th Cir. 1986) ............................................................ 49, 50

*Singleton v. City of New York,*
  632 F.2d 185 (2d Cir. 1980) ................................................ 35, 36, 37, 39

*Smalls v. Collins,*
  10 F.4th 117 (2d Cir. 2021) ..................................................................... 37

*Smith v. City of Hemet,*
  394 F.3d 689 (9th Cir. 2005) .................................................. 15, 16, 24, 25

*Smithart v. Towery,*
  79 F.3d 951 (9th Cir. 1996) ..................................................................... 15

*Sternberg v. Town of Danville,*
  2015 U.S. Dist. LEXIS 169068 (N.D. Cal. 2015) ............................... 53, 55

*Streit v. County of Los Angeles,*
  236 F.3d 552 (9th Cir. 2001) ............................................................ 49, 50

*Susag v. City of Lake Forest,*
  94 Cal. App. 4th 1401 (2002) .................................................................. 23

*Sussman v. San Diego Police Dep't,*
  2022 U.S. Dist. LEXIS 59197 (S.D. Cal. 2022) ....................................... 49

*Szajer v. City of Los Angeles,*
  632 F.3d 607 (9th Cir. 2011) ................................................................... 18

*Tatum v. City and County of San Francisco,*
  441 F.3d 1090 (9th Cir. 1986) ................................................................. 48

*Taylor v. Gregg,*

    36 F.3d 453 (5th Cir. 1994) ................................................................. 38, 39

*Thompson v. Clark,*

    ___ U.S. ___, 142 S. Ct. 1332 (2022) ................................................. 13, 28

*United States v. Kama,*

    394 F.3d 1236 (9th Cir. 2005) ............................................................ 49, 51

*Walker v. Child Protective Servs.,*

    2022 U.S. Dist. LEXIS 92953 (E.D. Cal. 2022) ....................................... 49

*Walker v. Doe,*

    2020 U.S. Dist. LEXIS 46260 (E.D. Cal. 2020) ....................................... 48

*Wallace v. Kato,*

    549 U.S. 384 (2007) ................................................................................ 31

*White v. Gittens,*

    121 F.3d 803 (1st Cir. 1997) ................................................................... 44

*Williams v. Consovoy,*

    453 F.3d 173 (3d Cir. 2006) .................................................................... 44

*Williams v. County of Alameda,*

    26 F.Supp.3d 925 (N.D. Cal. 2014) ........................................................ 53

*Williams v. Lorentz,*

    2018 U.S. Dist. Lexis 190023 (N.D. Cal. 2018) ...................................... 51


**United States Constitution**

Fourth Amendment .................................................................................. 9, 47

Fourteenth Amendment ................................................................................ 9

## **Statutes**

Ca. Penal Code § 148 ............................................................ 1, 6, 10, 23, 24, 25

Ca. Penal Code § 1016 ................................................................ 17, 19, 20, 33

Ca. Penal Code § 1018 ....................................................................................... 34

Civil Rights Act of 1871, § 1 ......................................................................... 13

Kan. Stat. Ann. § 12-4413(c), (d) (2008) ................................................... 43

Kan. Stat. Ann. § 22-2906(3), (4) (2008) .................................................. 42

28 U.S.C. § 2254 ............................................................................................... 14

42 U.S.C. § 1983 ....................................................................................... *passim*

42 U.S.C. § 1997e(a) ...................................................................................... 14

49 U.S.C. App. § 1472(j) ............................................................................... 38

## **Other Authorities**

Black's Law Dictionary 569 (10th ed. 2014) .............................................. 30

Black's Law Dictionary 1209 (10th ed. 2014) ........................................... 17

Black's Law Dictionary 1428 (10th ed. 2014) ........................................... 32

Black's Law Dictionary 1569 (10th ed. 2014) ........................................... 32

Black's Law Dictionary 1782 (10th ed. 2014) ........................................... 30

# I.
## STATEMENT OF JURISDICTION

Defendants agree with Plaintiff/Appellant Francisco Duarte's ("Plaintiff") statement in his Opening Brief about the District Court's jurisdiction, this Court's jurisdiction, and the timeliness of Plaintiff's appeal. (Appellant's Opening Brief ("AOB"), p. 1.)

# II.
## ISSUES PRESENTED

1.     Whether the District Court correctly found *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny bar Plaintiff's excessive force, false arrest, and substantive due process claims ("Plaintiff's Claims"), because success on Plaintiff's Claims would necessarily imply the invalidity of the fact that Plaintiff was criminally charged, pled no contest (the equivalent of guilty under California law) to violation of California Penal Code section 148(a)(1) (resisting arrest), and was given the equivalent of a sentence through a pretrial diversion program, when the criminal case was dismissed only after Plaintiff completed his obligations under the pretrial diversion program (the "*Heck* bar").

2.     Whether the District Court correctly dismissed Plaintiff's *Monell* claim (*Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978)) against the Stockton Police Department (the

1

"SPD") and the City of Stockton (the "City") where, because of the *Heck* bar, there was no constitutional violation by the individual Defendants as a matter of law, and thus there can be no *Monell* liability as a matter of law.

3.    Whether the District Court correctly dismissed Plaintiff's *Monell* claim against the SPD because the SPD is not a "person" for purposes of 42 U.S.C. § 1983.

4.    Whether the District Court correctly dismissed Plaintiff's *Monell* claim against the City and the SPD, or could have done so under any theory because of Plaintiff's threadbare and conclusory allegations in his operative First Amended Complaint ("FAC").

### III.
### STATEMENT OF THE CASE

A.    Overview.

This is the Ninth Circuit's opportunity to set the boundaries of the *Heck* bar in this Circuit with respect to no contest or guilty pleas entered by criminals, especially criminals who take advantage of some form of pretrial diversion program.

Plaintiff claims his civil rights were violated when he was arrested by SPD officers, but Plaintiff pled no contest to resisting that very same arrest. Plaintiff's claims of "excessive force," "false arrest," and filing a false police report (allegedly in violation of Plaintiff's substantive due process rights)

2

against Officers Kevin Hachler and Michael Gandy are all part of, and not divisible by any means, from the arrest itself, which Plaintiff agreed he resisted, in violation of California law, by pleading no contest. Thus, Plaintiff's Claims directly trigger the *Heck* bar because success on Plaintiff's Claims would necessarily invalidate the very punishment/equivalent of a sentence that Plaintiff received and served for resisting arrest. By this lawsuit, Plaintiff is trying to take advantage of *both* the pretrial diversion program he was offered and agreed to, to avoid a greater degree of punishment, and the money damages available in civil courts with respect to the very same incident to which he pled. For these reasons (and others discussed below), the District Court correctly held the *Heck* bar applies.

Plaintiff also asks this Court to reverse the District Court's ruling granting Defendants' motion to dismiss Plaintiff's *Monell* claim against the City and the SPD, but this Court should decline that invitation. We show that because the *Heck* bar mandates dismissal of Plaintiff's Claims against the individual defendants, the City and the SPD cannot be liable under *Monell* as a matter of law because a finding that the *Heck* bar applies means Plaintiff cannot show a constitutional violation by any of the individual defendants. Further, the District Court correctly ruled the SPD is not a "person" for purposes of 42 U.S.C. § 1983. Finally, Plaintiff failed to allege

a plausible basis for a *Monell* claim against the City and the SPD. The fact the District Court found that the City was not a person for purposes of 42 U.S.C. § 1983 is immaterial because it is well established this Court "may affirm the district court's decision on any ground supported by the record, even if it differs from the district court's rationale." *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004). Here, the record fully supports such a finding.

  B. <u>Facts</u>.

  There is no disagreement about the underlying facts. Defendants restate them here plainly, without the hyperbole and irrelevant issues that Plaintiff includes in his recital of the "facts" in his AOB.

  The only relevant facts on this appeal are these: on May 5, 2017, Plaintiff was in downtown Stockton, in the proximity of where a report to the SPD stated gunshots were being fired and an illegal "sideshow" was taking place. (Appellant's Excerpts of Record ("ER"), ER-6, lines 9-12; ER-48; ER-50) A large crowd had gathered, and the SPD responded to disperse it. (ER-6, lines 15-18; ER-34, p. 67, lines 5-13; ER-48; ER-22, p. 53, lines 2-4.) Plaintiff soon encountered SPD officers arresting another person.[1] (ER-7, lines 10-15; ER-47; ER-38, p. 83; ER-88, ¶ 11.) Plaintiff, whether

---

1 That other person was Alejandro Gutierrez, Plaintiff's co-plaintiff in the case below. Mr. Gutierrez did not file a notice of appeal. (AOB, n. 1, p. 4.)

intentionally or not, got very close to these SPD officers making this arrest—within three or four feet of them. (ER-7, lines 15-16; ER-40, p. 87, lines 18-20.) One of the SPD officers, Officer Gandy, ordered Plaintiff to back up—twice. (ER-7, lines 16-18; ER-57, ¶ 3.) Whether Plaintiff heard Officer Gandy's command—given twice—does not matter for purposes of this appeal; he failed to back up as ordered, so Officer Gandy took him to the ground. (ER-7, lines 23-24; ER-57, ¶ 3; ER-28, p. 25:5-23.)

Officer Hachler was on scene and he went to assist Officer Gandy. (ER-7, line 25; ER-48.) Officer Hachler ordered Plaintiff to give the officers his hands. (ER-7, lines 25-27; ER-57, ¶ 7.) Whether Plaintiff intentionally refused to comply or could not do so based on the position he was lying in does not matter for purposes of this appeal. Plaintiff did not provide the officers with his hands as ordered. Both Officer Gandy and Officer Hachler perceived Plaintiff was resisting arrest by tussling with them and trying to pull his arm away. (ER-7, lines 23-27; ER-55; ER-48.) During this tussle, Officer Gandy fell. (ER-54.) Officer Hachler then struck Plaintiff with his baton on Plaintiff's left leg, and that allowed the officers to handcuff Plaintiff and arrest him. (ER-7, line 27—ER-8, line 1; ER-47—48.)

Notably, Plaintiff does not claim any officer used any other, additional, or further force on him after he was arrested—in other words, all

5

means of force the officers used were part of their attempts to detain and arrest Plaintiff. (ER-8, lines 3-5; ER-88—89, ¶¶ 11-15.)

On May 15, 2017, Plaintiff was charged with violation of California Penal Code Section 148(a)(1) for resisting Officer Gandy's attempts to arrest him. (ER-8, lines 6-8; ER-47; ER-72, ¶ 5; Defendants' Supplemental Excerpts of Record ("SER")-10—11.)[2] Plaintiff initially pled "not guilty." (ER-8, lines 9-10; ER-72, ¶ 5.) As part of a plea deal with the San Joaquin County District Attorney's Office (the "DA"), however, he changed his "not guilty" plea to "no contest." (ER-8, lines 9-15; ER-72, ¶ 6; ER-75.)[3] In connection with his no contest plea, on July 12, 2018, Plaintiff signed a "Misdemeanor Advisement of Rights, Waiver and Plea Form" (the "Waiver and Plea Form") and presented it to the criminal court. The Waiver and Plea Form specifically explained to him his "no contest" plea "will have exactly the same effect in this case as a plea of guilty." (ER-75, ¶ 2.) It stated Plaintiff had to complete 10 hours of community service within six months,

---

2    Penal Code Section 148(a)(1) states, in pertinent part: "Every person who willfully resists, delays, or obstructs any public officer [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

3    As we explain in Section VII (A) below, in California a "no contest" plea is the same as a guilty plea.

and that if he failed to do so, he would receive "CTS"[4] and three years informal probation. (ER-75, ¶ 7.)

Right above where Plaintiff signed the Waiver and Plea Form, it specifically stated it was a "conviction," explaining that "this conviction could be used against [him] in the future as a prior conviction." (ER-76, ¶ 8.) It also states Plaintiff's "decision to enter into this plea has been made freely and voluntarily." (ER-75, ¶ 1; ER-76 "Defendant's Statement.")

Plaintiff signed the Waiver and Plea Form with his counsel present, and his counsel also signed the same page of the Waiver and Plea form stating she had explained to him all the ramifications of the plea deal. (ER-76, "Attorney's Statement.")

Unlike some pleas, the criminal court made and entered "Findings," including the Finding that "there is a factual basis for the plea(s)." (ER-76, "Court's Findings And Order.") The same section of the Waiver and Plea Form states the court "accepts" Plaintiff's plea. *Id*.

The court's minute order from the hearing at which it accepted the plea states the court would hold Plaintiff's plea "in abeyance" for Plaintiff timely to complete his community service by the next appearance, scheduled for January 14, 2019, and he would also have to obey all laws and not

---

4      "CTS" appears to be an abbreviation for "credit for time served."

commit the same or a similar offense. (ER-78.)

Plaintiff completed his community service and was not charged with any other crime for the requisite six month period. (ER-8, line 15; AOB 7.) Accordingly, on January 14, 2019, the court dismissed the criminal case. (ER-80.)

There is no evidence the court vacated the charges, Plaintiff's plea, the court's acceptance of the plea, or the sentence of community service he received. There is no evidence Plaintiff made any effort to set aside or expunge the charges, his plea, the court's acceptance of it, or the sentence.

C.    Procedural History.

On December 31, 2018, while Plaintiff's criminal case was still pending, he filed the instant lawsuit alleging, as is relevant here, claims of excessive force, false arrest, and falsifying a police arrest report against Officer Hachler and Officer Gandy, and *Monell* claims against the City and SPD. (ER-8, lines 18-19; ER-115, Docket No. 1.) The same attorney who represented Plaintiff in his criminal case filed the instant case for him. (ER-8, n. 4; ER-76; ER-83.)

On November 13, 2019, Plaintiff filed his operative FAC. (ER-83.) On November 27, 2019, Defendants filed a motion to dismiss portions of Plaintiff's FAC. (ER-9, lines 4-5; ER-117, Docket No. 17.) On January 9,

2020, Plaintiff filed his Opposition (ER-117, Docket No. 24), and on January 16, 2020, Defendants filed their Reply. (ER-117, Docket No. 25.)

By order issued on May 22, 2020, the District Court granted the motion to dismiss, dismissing Plaintiff's excessive force claim to the extent it was predicated on a violation of the Fourteenth Amendment, false arrest/false imprisonment claim, violation of substantive due process claim for allegedly filing a false police report, and Plaintiff's *Monell* claims against the City and SPD. Accordingly, this left only Plaintiff's excessive force claim against the individual defendants (under the Fourth Amendment). (ER-59—69; ER-5, line 21—ER-6, line 2.)

On September 16, 2020, Defendants filed a motion for summary judgment as to that remaining claim. (ER-9, lines 13-15; ER-120, Docket No. 52.) On October 1, 2020, Plaintiff filed his Opposition (ER-121, Docket No. 58), and on October 6, 2020, Defendants filed their Reply. (ER-121, Docket No. 62.)

By order issued on October 22, 2021, the District Court granted the motion. (ER-5.) On that same date, the District Court entered judgment in favor of Defendants in accordance with that order. (ER-4.)

On November 13, 2021, Plaintiff filed his notice of appeal. (ER-109.)

**IV.**

**SUMMARY OF ARGUMENT**

The old adage, "you do the crime, you do the time," rings especially true in this case. Here, Plaintiff did the crime—he resisted arrest and pled "no contest" to doing so. He then received a generous alternative to the allowable penalty of one year in the county jail and a $1,000 fine (Ca. Pen. Code § 148(a)(1))—he reached a deal where he agreed to do 10 hours of community service, plus six months of not committing the same or a similar offense and not violating any laws.

But, Plaintiff was not exonerated. He did not have any of the charges against him vacated or reversed. He did not prevail by convincing a jury or a judge of his innocence. He did not somehow "set aside" the criminal case. He did not set aside the court's finding of a factual basis for the resisting arrest charge to which he pled "no contest." He did not have the charges or the case expunged. There was no "invalidation" of the criminal case.

Unlike someone who is found not guilty in court who can then freely walk out of court with no strings attached, Plaintiff entered a plea that is equivalent to guilty, and, as a consequence, he had his liberty curtailed by having to serve a punishment of doing community service, and having to obey all laws to avoid additional punishment. While this may not be a "sentence" at the conclusion of a trial, it is, in substance, no different from a

10

situation where a criminal defendant is found guilty and is sentenced to community service (or sentenced in any other way). The substance of the deal was both a "punishment" and a "sentence," in that Plaintiff had his liberty curtailed on pain of further punishment, and he had to comply with terms (a sentence) that no ordinary person, whose liberty is not being curtailed by order of a criminal court (or by compelled agreement), would be subjected to.

Plaintiff now seeks to take advantage of the very plea deal he agreed to, and the sentence he served, on the technicality that as part of that plea deal the criminal case against him was dismissed—only after Plaintiff "did his time," *i.e.*, after he performed his community service and avoided being arrested again for a six month period. Indeed, Plaintiff's AOB is premised on his argument that because his criminal case was dismissed, the *Heck* bar does not apply. But, that premise is directly contrary to the purpose of the *Heck* bar, which is to bar a criminal defendant from suing civilly and obtaining money damages for crimes he committed that were found adversely to him.

To this day, Plaintiff remains guilty in substance of the resisting arrest charge he pled to. His criminal case was dismissed, but only after he served his time and without a vacatur of anything. Other Circuits have considered

guilt, or at least the failure to establish innocence, to be of paramount importance in applying the *Heck* bar in cases like this.

This Court should reject Plaintiff's attempt to erode the *Heck* bar. A sentence is a sentence, whether that sentence is 10 years in prison, a day in jail, or an hour of community service. Plea deals, by their very nature, allow criminal defendants to serve a lesser sentence, but a lesser sentence is not a termination in a manner that gets the criminal defendant around the *Heck* bar. Finding to the contrary would allow Plaintiff to prevail on semantics alone, simply because a conviction was not formally entered. That result would be contrary to the meaning of *Heck*.

Further, contrary to another of Plaintiff's arguments, his Claims— based entirely on events that occurred leading up to his arrest—are not divisible from the arrest itself.

For these reasons, this Court should affirm the District Court's grant of summary judgment based on the *Heck* bar.

The District Court also properly dismissed Plaintiff's *Monell* claim against the City and SPD. The law is clear that where a claim is barred by *Heck*, the plaintiff cannot assert a *Monell* claim because there is no constitutional violation to underpin the *Monell* claim. Further, the District Court did not err in finding the SPD is not a "person" for purposes of

12

Plaintiff's Claims. Finally, the District Court correctly found Plaintiff failed to allege a *Monell* claim against both the City and the SPD. For these reasons, this Court should affirm the District Court's grant of Defendants' motion to dismiss.

## V.

## THE STANDARD OF REVIEW

Defendants agree with Plaintiff's Opening Brief regarding *de novo* review being the applicable standard of review on this appeal. (AOB, p. 12.) Defendants also agree with Plaintiff's statements about this Court accepting Plaintiff's factual allegations as true with regard to the motion to dismiss, and viewing the evidence in the light most favorable to Plaintiff with regard to the summary judgment motion. (AOB, p. 13.)

## VI.

## STANDARDS GOVERNING APPLICATION OF THE *HECK* BAR

A.    The Historical Context and Purpose of the *Heck* Bar.

In 1871, Congress passed the Civil Rights Act of 1871. Section 1 of that Act, now codified at 42 U.S.C. § 1983, created a species of federal tort liability that allowed individuals to sue state and local officers for deprivations of constitutional rights. *Thompson v. Clark*, ___ U.S. ___, 142 S. Ct. 1332, 1336-37 (2022). In general, exhaustion of state law remedies is not a prerequisite to suing under Section 1983. *Heck*, 512 U.S. at 480

13

(1994), citing *Patsy v. Board of Regents of Fl.*, 457 U.S. 496, 501 (1982), *superseded by statute* (42 U.S.C. § 1997e(a), requiring prisoners (and only prisoners) to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983, as stated in *Felipe v. Surgees*, 2009 U.S. Dist. LEXIS 12146, *7-8 (E.D. Cal. 2009)). By contrast, the federal habeas corpus statute (28 U.S.C. § 2254) requires that state prisoners first exhaust their state law remedies. *Heck*, 512 U.S. at 480-81 (1994), citing *Rose v. Lundy*, 455 U.S. 509 (1982).

In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court considered the interplay between Section 1983 and the federal habeas corpus statute, holding that habeas corpus is the exclusive remedy for a state prisoner to challenge confinement and seek release, even if that claim came within the terms of Section 1983. *Id.* at 488-90. *Preiser* "did not create an exception to the 'no exhaustion' rule of § 1983; it merely held certain claims by state prisoners are not cognizable under that provision, and must be brought in habeas corpus proceedings, which do contain an exhaustion requirement." *Heck*, 512 U.S. at 481 (1994).

In *Heck*, the Supreme Court, building off of *Preiser*, held a Section 1983 claim calling into question the lawfulness of a plaintiff's conviction or sentence is not cognizable until the conviction or sentence has

been invalidated. *Heck*, 512 U.S. at 489-90 (1994). *Heck* analogized a Section 1983 claim to a common law cause of action for malicious prosecution, which includes, as an element of the cause of action, termination of the criminal proceeding in favor of the accused. *Heck*, 512 U.S. at 484 (1994).

The main tenet underpinning *Heck*'s holding was the avoidance of parallel litigation on issues of probable cause and guilt, precluding the possibility of the criminal-defendant-turned-civil-plaintiff from succeeding in the tort action after being convicted in the underlying criminal prosecution, "in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512 U.S. at 484 (1994).

B.     Fundamental Aspects of the *Heck* Bar.

The basic premise of the *Heck* bar can be summed up simply: "'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.'" *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (*en banc*) (*quoting Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)). Thus, "the relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or

'demonstrate' the invalidity of the earlier conviction or sentence." *Smith*, 394 F.3d at 695 (quoting *Heck*, 512 U.S. at 487).

Thus, *Heck* held the *Heck* bar applies unless the criminal defendant proves, in the civil case, "the conviction or sentence has been [(1)] reversed on direct appeal, [(2)] expunged by executive order, [(3)] declared invalid by a state tribunal authorized to make such determination, or [(4)] called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. As Circuit Judge Sandra S. Ikuta pithily put it in her dissent in *Roberts v. City of Fairbanks*, 947 F.3d 1191 (9th Cir. 2020), "to claim tort damages for a wrongful conviction, the plaintiff must prove that a court (or the executive) recognized that the conviction was invalid and wiped out the conviction." *Id*. at 1206 (Ikuta, J., dissenting).

As recently as in 2019, the Supreme Court re-affirmed *Heck's* significance, holding "*Heck* explains why favorable termination is both relevant and required for a claim analogous to malicious prosecution that would impugn a conviction . . . The alternative would impermissibly risk parallel litigation and conflicting judgments." *McDonough v. Smith*, ___ U.S. ___, 139 S. Ct. 2149, 2160 (2019). In short, a plaintiff must show his criminal conviction was invalidated, and *Heck* set forth four criteria to show this.

The import of this is that unless the plaintiff can show one or more of those four criteria, "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 487.

## VII.
## PLAINTIFF'S CLAIMS ARE BARRED BY *HECK*

A.    The *Heck* Bar Applies to No Contest Pleas.

The starting point to show the *Heck* bar applies here is Plaintiff's plea of "no contest,"[5] which under California law is "considered the same as a plea of guilty." Ca. Pen. Code § 1016(3). Indeed, a plea of "no contest" such as Plaintiff's, serves "as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency." *North Carolina v. Alford*, 400 U.S. 25, 35 n. 8 (1970). Consistent with that, in California, "upon a plea of nolo contendere, the court shall find the defendant guilty." Ca. Pen. Code § 1016(3).

The Ninth Circuit treats no contest pleas *the same* as guilty verdicts

---

5      Under California law, the formal term is "nolo contendere." Ca. Pen. Code § 1016(3). That is the Latin phrase for "no contest"; per Black's Law Dictionary, "no contest" pleas are "also termed . . . nolo contendere." *Black's Law Dictionary* 1209 (10th ed. 2014). In California, the terms are used interchangeably; indeed, Plaintiff's Waiver and Plea Form referred to it as "no contest (nolo contendere)" (ER-75, ¶ 2), and the criminal court's minute order stated he pled "nolo contendre." (ER-78.)

and guilty pleas for purposes of *Heck*. *See, e.g., Radwan v. County of Orange*, 519 F. App'x 490, 490-91 (9th Cir. 2013) ("[w]e have repeatedly found *Heck* to bar § 1983 claims, even where the plaintiff's prior convictions were the result of guilty or no contest pleas"); *accord, Nuno v. San Bernardino County*, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999) ("for purposes of the *Heck* analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or a jury verdict of guilty"); *Szajer v. City of Los Angeles*, 632 F.3d 607, 609, 612 (9th Cir. 2011) (applying the *Heck* bar to plaintiffs' Section 1983 claims after they pled no contest).[6] As is important here, "under *Heck*, what is relevant about plaintiff's nolo pleas . . . is the simple fact of their existence." *Nuno*, 58 F. Supp. 2d at 1136.

Plaintiff devotes several pages to the argument that, *in general*, no contest pleas do not require a factual basis (and therefore may not amount to a finding of guilt) (AOB pp. 37-40), but that *generality* is inapplicable here because, as stated above, (i) the criminal court expressly found "there is a factual basis" (ER-76, "Court's Findings And Order"), and (ii) Plaintiff's

---

6    Plaintiff claims "this Court has not squarely addressed the question whether *Heck* applies where a conviction is obtained through a nolo contendere or no contest plea." (AOB p. 41, n. 9 (citing *Ove v. Gwinn*, 264 F.3d 817, 823, n. 4 (9th Cir. 2001)), but as can be seen by the above cases, the Ninth Circuit has squarely addressed it and treats such pleas the same as a guilty verdict or guilty plea.

plea that he signed expressly stated it would "have exactly the same effect in this case as a plea of guilty . . . ." (ER-75, ¶ 2.)

Plaintiff quotes Section 1016(3) for his claim that his plea cannot be used against him in a civil suit (AOB, pp. 39-40), but that is not correct. Section 1016(3) states only that a no contest plea cannot be used "*as an admission* in any civil suit." (Emphasis added.) (Plaintiff's Waiver and Plea Form stated substantially the same thing ("I understand that a plea of no contest (nolo contendere) will have exactly the same effect in this case as a plea of guilty, but it cannot be used against me in a civil lawsuit." (ER-75, ¶ 2.)) But, although a plea cannot be used against a criminal defendant *as an admission* in a civil suit, it can be used defensively by a civil defendant to support the *Heck* bar against a criminal defendant turned civil plaintiff. *Nuno*, 58 F. Supp. 2d at 1136 (civil defendant being sued by a criminal defendant who pled no contest under Section 1016(3) can use the no contest plea to show the *Heck* bar).

A California Court of Appeal recently interpreted Section 1016(3) the same way. In *Fuller v. Dept. of Transp.*, 38 Cal. App. 5th 1034, 1044-45 (2019), the court held a party to a civil case could offer impeachment evidence against a criminal defendant who had pled no contest to charges arising out of a vehicle accident and who was a witness, but not a party, to

19

civil litigation arising from incident.

As the *Fuller* court explained:

> 'The inference is clear that the exclusion of a nolo contendere plea from the reach of Evidence Code section 1300 was intended to apply only where the plea was offered *against the defendant* in a subsequent civil suit for the same conduct to which the defendant pled.' [The criminal defendant], however, was not a defendant within the meaning of Penal Code section 1016. The plea was not offered against [the criminal defendant] to establish his civil liability.'

(Emphasis in original; citation omitted.)

In short, no case prevents a defendant from using a plaintiff's no contest plea *defensively* against the plaintiff, as Defendants did here. The only authority on the issue allows it. Indeed, a contrary result would eliminate the *Heck* bar whenever a criminal defendant pleads no contest. This is not what was intended.

Thus, for purposes of the *Heck* bar, Plaintiff's no contest plea is the same as a guilty plea, and the *Heck* bar applies to it.

## B. Plaintiff's Claims Are Not Divisible From His Underlying Arrest.

Plaintiff's potential success on his Claims against the individual defendants (*i.e.* the SPD officers) stemming from his arrest necessarily would invalidate his no contest plea to resisting that same arrest. This is inescapable. Plaintiff's AOB uses three tactics to try to separate the two

things, but all three tactics fail.

Plaintiff's first tactic is to argue success on his claim would not necessarily imply the invalidity of his conviction. (AOB, pp. 29-30, 31-34.) This is false. Plaintiff offers three "versions" of events (AOB, pp. 32-33) to try to show his no contest plea of resisting arrest *might be* unrelated to his civil claims. However, a plain examination shows this fails.

Plaintiff's first "version" of events points to Officer Moya's command to him to disperse, and that his resisting arrest charge *could* be allocated to his failure to do this. (AOB, p. 32.) But, nothing in the record even suggests that Plaintiff was arrested for not obeying Officer Moya's command. Indeed, Officer Gandy (Plaintiff's arresting officer) states in his incident report that Plaintiff was "interfering with **me**" and after Plaintiff "failed to move or disperse, **therefore** I went to grab his right arm and he put his hands up and pushed away at me. I was able to grab his left arm and took him to the ground." (ER-54; Emphasis added.) This is the point when Plaintiff was arrested—after he disobeyed Officer Gandy's command, not Officer Moya's. Moreover, it bears noting that Plaintiff's criminal complaint explicitly says he was arrested after resisting *Officer Gandy's* attempt to

arrest him. (SER-10—11.)[7] This "version" of events is therefore irrelevant.

Plaintiff's second "version" of events points to Plaintiff allegedly pushing Officer Gandy, but Plaintiff is playing fast and loose with the facts here in an attempt to fabricate a dispute where there is none. As discussed above, Officer Gandy went to grab Plaintiff and Plaintiff was struggling with him, and Plaintiff "pushed away at [Officer Gandy]." (ER-54.) In other words, Plaintiff continued to struggle rather than provide his hands. While Officer Gandy was taking Plaintiff to the ground, Officer Gandy "was pulled to the ground with [Plaintiff]." (ER-54.) Plaintiff was then arrested after Officer Hachler came to assist—thus this "version" is really all part and parcel of Plaintiff's arrest, not an independent act of pushing by Plaintiff. This version is therefore equally irrelevant.

Plaintiff's final "version" of events is the only "version" at issue here—Officer Gandy took Plaintiff to the ground, Plaintiff struggled, and Officer Hachler used his baton to obtain compliance. In that regard, *Nuno*, 58 F. Supp. 2d at 1133, is right on point. In *Nuno*, the court explained *Heck* found "a successful section 1983 action, premised on a police officer's use

---

7    Notably, Plaintiff failed to include his criminal complaint in his ER. Rather, while Plaintiff included the declaration of DA Victor Bachand (ER-70—73), the criminal complaint was Exhibit A to DA Bachand's declaration. Plaintiff chose to omit Exhibit A from his ER (while including some of the other exhibits). Defendants have submitted DA Bachand's declaration in its entirety in their SER.

of excessive force during an arrest, would necessarily imply the invalidity of the plaintiff's conviction for resisting that arrest in a state where the lawfulness of the resisted arrest was a prima facie element of the resisting-arrest offense." *Id.* at 1133, citing *Heck*, 512 U.S. at 486 n. 6.

California is such a state. *See People v. Wilkins*, 14 Cal. App. 4th 761, 776 (1993) (Section 148 requires that "the officer at the time of the offense be engaged in the ***lawful*** performance of his duties" (emphasis added); *accord*, *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1409 (2002); *People v. Olguin*, 119 Cal. App. 3d 39, 44 (1981) ("[s]ince the officer must be acting in the performance of his duty, the use of excessive force renders it impossible for an arrestee to violate section 148").

Plaintiff's no contest sentence plea under Penal Code section 148 thus necessarily determines each SPD officer was "engaged in the lawful performance of his duties." Accordingly, a successful Section 1983 action arising out of the same arrest would necessarily invalidate Plaintiff's resisting arrest plea. *Nuno*, 58 F. Supp. 2d at 1133. The *Heck* bar must apply.

Plaintiff's second tactic is to miscite cases as supposed support for the proposition that his federal claim and criminal sentence can somehow co-exist. (AOB, pp. 30-31, 34-37.) That, too, is false; they cannot. Plaintiff's federal claim would be viable only if the officers "used excessive force

subsequent to the time" Plaintiff resisted arrest. *Smith*, 394 F.3d at 699, citing *Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001). Therefore, if "[t]here was no spatial or temporal distinction between the acts for which Plaintiff was convicted and the acts of [the police officer]," the excessive force action fails. *Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1299 (E.D. Cal. 2014). Here, there is no spatial or temporal distinction between the acts for which Plaintiff was convicted and the arrest he pled no contest to resisting. All of Plaintiff's cases can be easily distinguished.

In *Kon v. City of Los Angeles*, 49 Cal. App. 5th 858 (2020) (AOB, p. 30), an officer saw a limousine driver speeding, tackled him, put his knee on him, struck him, and handcuffed him. Although the driver was charged with resisting arrest under Penal Code section 148, he pled not guilty to that charge and the court later *reduced* the charge to an infraction charge of disturbing the peace, to which the driver pled no contest. Thus, the resisting arrest charge was no longer at issue. The court held the infraction disturbing the peace charge did not bar the driver's excessive force claim, but that is different from a resisting arrest charge. This case is therefore inapposite.

In *Hooper v. Cty. of San Diego*, 629 F.3d 1127 (9th Cir. 2011) (AOB, p. 30), a loss prevention officer handcuffed the plaintiff, suspecting her of theft. A sheriff's deputy soon arrived and removed the handcuffs because

she appeared compliant. A search of her car found methamphetamine, and in response the plaintiff jerked away and a struggle ensued. *After the deputy fully restrained the plaintiff, the deputy summoned his police dog, which bit the woman on the head several times*. Not surprisingly, the court had no trouble distinguishing between the two phases of the plaintiff's interaction with law enforcement. *Id.* at 1130-31. But, even if it could not, the court observed, "[i]t is sufficient for a valid conviction under § 148(a)(1) that at some time during a 'continuous transaction' an individual resisted, delayed, or obstructed an officer when the officer was acting lawfully. It does not matter that the officer might also, at some other time during that same 'continuous transaction,' have acted unlawfully." *Id.* at 1132. *Hooper* thus involved force by law enforcement that occurred after the plaintiff was taken into custody and which was not part of same continuous transaction. In the case at bar, Plaintiff's excessive force claim *is* part of the same continuous transaction as his arrest.

Plaintiff also cites *Smith,* 394 F.3d 689, and *Sanford*, 258 F.3d 1117 (AOB, p. 31); but neither support his position. In both cases, the courts could not determine based on the facts of the cases whether the alleged excessive force was part of the same transaction to which the respective plaintiffs pled guilty to resisting arrest, making them inapposite here.

Plaintiff's final tactic is to try to manufacture some "excessive force" that occurred after his arrest to keep his Claims alive, by arguing he was forced to "walk on his broken leg to the police car." (AOB, p. 33.) First, to be clear, Plaintiff's injury was to his ankle area ("my left leg on my ankle area"). (ER-45, p. 96:21 – 97:2; ER-55.) Moreover, there is no evidence any officer knew he had a broken leg. In a conceptually identical scenario, an inmate alleged officers broke his ankle during a struggle and then made him walk on it after he complained to the officers of pain in his ankle. *Harbridge v. Pasillas*, 2011 U.S. Dist. LEXIS 5691, *46-49 (E.D. Cal. 2011). The court rejected this claim because there was no evidence the officers knew the extent of the plaintiff's injury, and thus the claim did not constitute excessive force. Here, there is similarly nothing in the record to show Officer Gandy knew the extent of Plaintiff's injury. Instead, the record shows only that, after Plaintiff had been transported to the hospital, Officer Gandy saw an "abrasion" on Plaintiff's ankle, and an x-ray was later taken and then showed Officer Gandy that it was broken. (ER-55.) Thus, this tactic fails because it cannot constitute excessive force as a matter of law.

Further, in Plaintiff's declaration in opposition to Defendants' motion for summary judgment (ER-56—58), there is nothing indicating that Plaintiff conveyed this information about his injury to Officer Hachler at all.

Plaintiff's plea of no contest to resisting arrest and his federal claim are inextricably linked. The *Heck* bar applies.

### C.  None of the Criteria Required to Remove the *Heck* Bar Are Present Here.

As explained above, the *Heck* bar applies unless there was (1) reversal on appeal, (2) expungement by executive order, (3) judicial declaration of invalidity, or (4) calling into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. As Judge Ikuta put it "[i]n other words . . . the plaintiff must prove that a court . . . wiped out the conviction." *Roberts*, 947 F.3d at 1206 (Ikuta, J., dissenting).

It is undisputed none of this occurred here. Plaintiff's sentence was not reversed on appeal. It was not expunged. It was not declared invalid. Plaintiff never sought, and no court issued, a writ of habeas corpus. Thus, Plaintiff's sentence was never "wiped out." Rather, Plaintiff completed his sentence in full—he performed the requisite hours of community service and was not charged with any criminal offenses for the required six month period.

In an attempt to sidestep this fatal hurdle, Plaintiff argues the dismissal of his criminal case (after he completed his sentence) and subsequent "vacatur" of his plea constitute an exception that gets him around the *Heck* bar. (AOB, pp. 22-29.) It does not. First and foremost, there was no

"vacatur" of his plea.

Second, Plaintiff relies primarily on two inapposite decisions, *Thompson*, 142 S. Ct. 1332, and *Roberts*, 947 F.3d 1191. *Thompson* is off point factually for at least three reasons: (1) the plaintiff in *Thompson* did not plead to any charge; charges were dropped before any plea and the case was dismissed. *Id.* at 1336; (2) the plaintiff in *Thompson* was not given any sentence and, therefore, did not serve any portion of a sentence before his case was dismissed, unlike the Plaintiff here, who completed his entire sentence and then had his pending criminal case dismissed; and (3) *Thompson* dealt with a malicious prosecution action, and, as Plaintiff concedes, "'favorable termination' for purposes of a malicious prosecution suit is not the same as 'favorable termination' for purposes of assessing the *Heck* bar in other kinds of suits." (AOB, p. 22.) The court in *Roberts* noted this as well: "*Heck's* favorable-termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim." *Roberts*, 947 F.3d at 1201.

As to *Roberts*, it cannot be overlooked the case involved *significant* doubts about the criminal defendants' underlying guilt for the murder of a 15 year old boy, especially because other people later confessed to committing the murder. After the criminal defendants had been sentenced to

hefty prison sentence ranges of 30 to 77 years, and after serving 18 years of those sentences, they understandably chose to enter into settlement agreements to secure their immediate release, rather than endure a protracted legal challenge to their continued imprisonment (which they alleged the prosecution threatened to tie up for several years in appeals.) *Id.* at 1194.

Here, by contrast, Plaintiff never did anything to try to challenge his culpability—he pled no contest and signed a paper stating it was the same as a guilty plea and a conviction, and he never challenged any of this; not the charges, or his plea, or anything else. This alone makes *Roberts* a poor point of comparison. Moreover, as Judge Ikuta pointed out in her dissent in *Roberts*, the "underlying convictions were not invalidated but were instead vacated pursuant to settlement agreements." *Id.* at 1209. Thus, *Roberts* in effect incorrectly created a fifth means of removing the *Heck* bar, which *Heck* did not authorize. This Court should not similarly follow suit.

Further, the *Roberts* court also expressly limited its holding: "We merely hold that where, as here, a § 1983 plaintiff's conviction is **<u>vacated</u>** by a state court, that conviction has been 'declared invalid by a state tribunal authorized to make such determination' . . . (the third exception to *Heck's* bar), and that *Heck* is therefore no bar to the suit." *Id.* at 1203. (Emphasis added.)

29

Indeed, the concept of "vacatur" is central to Plaintiff's arguments espousing *Roberts*. But, those arguments fail because *there was no vacatur here*. While the Waiver and Plea Form made reference to "vacate plea and enter dismissal on Jan. 12, 2019" (ER-75, ¶ 7), that is not the relief the court granted—and Plaintiff never made a request for that relief. The court's July 12, 2018, minute order (ER-78) says nothing about vacating Plaintiff's plea (or anything else); nor does the court's January 14, 2019, minute order dismissing the case. (ER-80.) It did not vacate Plaintiff's no contest plea or anything else.

The *Roberts* court made the point of defining "vacate" as "to nullify or cancel; make void; invalidate." *Id.* at 1198, citing *Black's Law Dictionary* 1782 (10th ed. 2014). In so doing, *Roberts* paired the "invalidate" portion of this definition to the wording of the third criteria in *Heck*—a court declaring the conviction "invalid."

By contrast, Black's Law Dictionary defines "dismissal" as: "termination of an action or claim without further hearing, esp. before the trial of the issues involved; esp. a judge's decision to stop a court case." *Black's Law Dictionary* 569 (10th ed. 2014). Significantly, termination of an action without further hearing is not one of the criteria in *Heck*.

Here, the criminal court did not *vacate* anything in Plaintiff's criminal

case. It dismissed the case—only because Plaintiff did his time by complying with the punishment the court imposed. *Roberts* is therefore inapplicable, and none of the four criteria in *Heck* exist here.

> **D.** It is Undisputed Plaintiff Pled No
> Contest and the Court Accepted that Plea.

It is undisputed Plaintiff pled no contest to the criminal charge, a no contest plea is the same as a guilty plea for purposes of *Heck*, the Court accepted the plea, Plaintiff served a sentence of community service, and he never obtained vacatur, reversal, or expungement of any of these things.

Plaintiff tries to alter reality by making it appear like his criminal plea and punishment/sentence somehow faded away in some ephemeral fashion or never happened in the first place. (AOB, pp. 15-21, 26-28.) He argues he was never "sentenced" or "convicted" because as part of his plea deal—and sentence—his criminal case was dismissed. But, this is just semantics. In substance, Plaintiff did serve a sentence (and a punishment) and he was convicted (as his Waiver and Plea Form expressly stated).

Moreover, whether there was a conviction in the technical sense is not the issue because the *Heck* bar applies to "a conviction **or sentence**." *Wallace v. Kato*, 549 U.S. 384, 393 (2007) (Emphasis added). Contrary to Plaintiff's assertion that Defendants "can't show that [Plaintiff's] ten hours of community service was a 'sentence'" (AOB, p. 18), a sentence is exactly

31

what Plaintiff served. What else can one accurately and honestly call it? Plaintiff did not just walk into a criminal court with the altruistic intention of offering to perform community service. He was summoned there by the judicial process, and he pled guilty and agreed to do community service so he would not suffer a greater penalty. This was a punishment imposed on him because of the crime he pled to. *See Black's Law Dictionary* 1569 (10th ed. 2014) (defining a "sentence," in relevant part, as "the punishment imposed on a criminal wrongdoer," and defining "punishment" (at 1428) as "[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law").

A criminal sentence is considered imposed when community service is ordered to be performed. *Barry v. Bergen County Probation Dep't*, 128 F.3d 152, 161 (3rd Cir. 1997). Further, even requiring something as minimal as 14 hours of attendance at an alcohol rehabilitation program constitutes a sentence. *Dow v. Circuit Court of the First Circuit*, 995 F.2d 922, 923 (9th Cir. 1993) (*per curiam*). The critical inquiry is whether "the sentence . . . requiring [a criminal defendant's] physical presence at a particular place, significantly restrains [the criminal defendant's] liberty to do those things which free persons in the United States are entitled to do." *Id.* Put differently, a sentence is imposed if "an individual . . . is required to

be in a certain place—or in one of several places—to attend meetings or to perform services, [and] is clearly subject to restraints on his liberty not shared by the public generally." *Barry*, 128 F.3d at 161. Such was the case here.

Plaintiff's tautology hinges entirely on the comment in the July 12, 2018, minute order that the court both accepted Plaintiff's no contest plea and "held [it] in abeyance." (ER-78.) But, that is just terminology indicating the court was giving Plaintiff the agreed-on amount of time to complete his sentence—it does not in any way detract from the fact that Plaintiff pled no contest. *See also* Ca. Pen. Code § 1016 (listing the only allowable types of pleas (including no contest (§ 1016(3)), and not listing a "plea in abeyance"); *People v. Schwarz*, 79 Cal. App. 561, 568 (1926) ("[w]e know of no authority for pleas in abatement in criminal cases. Section 1016 of the Penal Code specifies the pleas which are recognized in this state"); *People v. Melone*, 71 Cal. App. 2d 291, 300 (1945) ("'defendants have come forward and under what is in the nature of a plea of confession and avoidance . . .' There is no such plea recognized in a criminal action in this state" (citing § 1016.).

Penal Code Section 1016(3) states Plaintiff's no contest plea is "considered the same as a plea of guilty and that, upon a plea of nolo

contendere, the court **shall** find the defendant guilty." (Emphasis added). This is consistent with the Waiver and Plea Form Plaintiff signed, which states the plea of no contest "will have exactly the same effect in this case as a plea of guilty." (ER-75, ¶ 2.) It is also consistent with the handwritten language on it (ER-75, ¶ 7) that says if Plaintiff failed to perform, he would receive "CTS" (credit for time served) and three years of informal probation. This means Plaintiff's no contest plea truly was the equivalent of a guilty plea because—as is the case with a guilty plea—if he failed to perform, there would be no need for a trial; he already had received his conditional sentence of three years' informal probation. This is also consistent with the fact that the Plea and Waiver Form specifically stated there was a "conviction." (ER-78, ¶ 8).

Further, under California law, Plaintiff had the right to ask the court to permit him to withdraw his plea of no contest and replace it with a plea of not guilty. *See* Ca. Pen. Code § 1018 ("[o]n application of the defendant at any time before judgment . . . the court may . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted"). This is a powerful remedy, but the record shows Plaintiff failed to take advantage of it to try to remove the *Heck* bar.

In sum, nothing that occurred in the criminal case is indicative of

innocence or even absence of guilt. Plaintiff pled to a plea that is the equivalent of guilty, he served the equivalent of a sentence, and his plea was not withdrawn or vacated. In substance, there is no difference between what happened here and a situation where a criminal defendant pleads guilty or is convicted and serves his sentence (which could be anywhere from incarceration, probation, a fine, community service, etc.), and then is released from his obligations. Both situations trigger the *Heck* bar.

> E. The Better-Reasoned Decisions From Other Circuits that Applied the *Heck* Bar to Pretrial Diversion Cases Considered Culpability and Service of a Sentence as Factors.

Neither side has located a Ninth Circuit case directly on point on whether a plea of no contest as part of a pretrial diversion program creates a *Heck* bar; however, other Circuits have spoken on this specific issue, with the Second, Third, and Fifth Circuits finding the *Heck* bar applicable in such situations, and the Sixth, Eighth, Tenth, and Eleventh Circuits finding otherwise.

As we explain, the Second, Third, and Fifth Circuits have the better reasoned and more sensible approach to the situation.

The Second Circuit first considered the effect of pretrial diversion programs on subsequent Section 1983 claims in *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981). In

*Singleton*, the court held a plaintiff who obtained termination of his criminal case pursuant to a pretrial diversion program could not bring suit under Section 1983 for false imprisonment. There, the plaintiff went to trial on a resisting arrest charge and it resulted in a hung jury. His case was later terminated pursuant to New York's pretrial diversion program. The court held that because the plaintiff's innocence was not established due to the hung jury, the criminal case was not favorably terminated and the plaintiff was not allowed to maintain his suit under Section 1983.

The Second Circuit again considered the issue in *Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992). In *Roesch*, the court held that where the plaintiff completed his two year probationary program and then obtained termination of his criminal case pursuant to Connecticut's pretrial diversion program, he could not maintain his suit under Section 1983 because he failed to establish his innocence before termination of his criminal case. The court held "[a] person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim. Thus, we hold trial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit." *Id.* at 853.

As can be seen, the deciding factor in both *Singleton* and *Roesch* was

36

the plaintiff's potential innocence or guilt. Here, as explained above, not only has Plaintiff never established his innocence, everything about his criminal case indicates a *lack* of innocence, including his plea of no contest (*i.e.,* guilty), the treatment of that as a conviction, his serving his court-sanctioned punishment, and the lack of an acquittal, exoneration, vacatur, or expungement.

Plaintiff argues a recent Second Circuit case, *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021), indicates that Circuit's "retreat" from its holdings in *Singleton* and *Roesch* (AOB at p. 27), but that is not true. For one thing, the Smalls court did not even cite *Roesch*. Moreover, in *Smalls*— unlike the situation in the instant case—the criminal defendant was given pretrial diversion *without entering a plea*. That factor alone distinguishes the case.

The District Court in the instant case relied on *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005) (ER-12—13), and rightly so. In *Gilles*, the court held the *Heck* bar applied to Section 1983 claims where the plaintiff was charged under Pennsylvania law with resisting arrest, disorderly conduct, and failure to disperse; pled guilty to the disorderly conduct charge; did not appeal that conviction; and was given pretrial diversion. After the plaintiff completed his probation, all charges were dismissed and his criminal record

was expunged. Interestingly, under Pennsylvania law, the program was "not intended to constitute a conviction," but "it may be statutorily construed as a conviction for purposes of computing sentences on subsequent convictions," and that by entering the program, the defendant "waives his right to prove his innocence, but at the same time, does not admit guilt." *Id.* at 209.

Once again, the lack of innocence and the imposition of some form of limitation on the criminal defendant's freedoms were the deciding factors. *Id.* at 209. Here, the same factors are in place.

The Fifth Circuit, too, has determined that participation in a pretrial diversion program creates a *Heck* bar as to related Section 1983 claims. In *Taylor v. Gregg*, 36 F.3d 453 (5th Cir. 1994) (*overruled on other grounds*, *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)), the court held the criminal defendants' entry into a pretrial diversion agreement was not akin to the termination of the criminal proceedings in their favor. They were indicted for violation of interference with a flight crew (49 U.S.C. App. § 1472(j)) and entered into a pretrial diversion program, consenting to an "adjournment in contemplation of dismissal," under which "offenders must acknowledge responsibility for their actions, but need not admit guilt." *Id.* at 455-56. They later sued under Section 1983 for malicious prosecution and false arrest. Again, culpability for the underlying action was a central point

of consideration, as the court reasoned, "[a]n adjournment in contemplation of dismissal leaves open the question of the accused's guilt. The adjournment statute permits dismissal of the charges, and permits the arrest and prosecution to be deemed a nullity. The statute does not authorize a finding of 'not guilty,' it simply permits the court to expunge the record." *Id.* at 456. The *Taylor* court agreed with *Singleton* and the Second Circuit that successful pretrial diversion, when culpability still potentially exists, does not meet the criteria to remove the *Heck* bar. *Id.*

In *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 654 (5th Cir. 2007), the Fifth Circuit held entry into a pretrial diversion program amounted to a conviction ("though not formally a conviction or sentence, is its functional equivalent in light of *Heck's* rationale"). There, the plaintiff entered into a pretrial diversion program where he pled guilty, paid a $2500 fine, and received ten years' probation. Like here, his charges were dismissed after successful completion of the program, and he later sued for false arrest, false imprisonment, excessive force, and malicious prosecution. Once again, the plaintiff's plea was the deciding factor in finding that *Heck* barred the claim—"although there is no finding of guilt, there is at least a judicial finding that the evidence substantiates the defendant's guilt." *Id.* at 656. The same is true in the instant case.

Finally, in *Kastner v. Texas*, 332 F. App'x 980, 981 (5th Cir. 2009), the Fifth Circuit held *Heck* barred a civil rights lawsuit where the criminal defendant had pled no contest and entered into a pretrial diversion program. The criminal-defendant-turned-plaintiff argued that because he pled nolo contendere, he was not required to accept responsibility for the actions alleged in the criminal indictment, but the court rejected this argument. *Id.* The court thus re-affirmed *DeLeon* and reiterated that a pretrial diversion constitutes a "conviction" under *Heck*. *Id.*

The reasoning of these courts is compelling. It is also consistent with, and promotes the purposes of, *Heck*. These courts carefully considered a Section 1983 plaintiff's guilt, or at least lack of established innocence, in addition to whether they served a sentence in some form, regardless of whether a formal conviction was entered or other technicalities of a particular state's criminal system. They thus looked to the substance of the situation and the substance of the *Heck* bar and its intended purpose, rather than be led astray by technicalities.

F.    By Contrast, the Sixth, Eighth, Tenth, and
      Eleventh Circuits Did not Analyze this Issue
      <u>With the Same Level of Due Consideration</u>.

As shown above, the Second, Third, and Fifth Circuits applied the *Heck* bar after considering the criminal defendant's underlying guilt or lack

thereof, and the imposition of a sentence. The decisions of the Sixth, Eighth, Tenth, and Eleventh Circuits either lack this analysis or the facts of the cases were materially different, such that this Court should not follow their holdings.

For example, the Sixth Circuit case Plaintiff cites, *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633 (6th Cir. 2008) (AOB, p. 19), is factually inapposite. In *Grant*, the court held a juvenile plaintiff who completed a diversion program was neither convicted nor sentenced and was habeas ineligible, and thus she was not barred from bringing a Section 1983 action. There, a minor was charged with drug trafficking because she gave another student one of her Adderall pills in class. The charge was "diverted and dismissed after [she] satisfied her diversion contract." *Id*. at 636. The court held: "Given the facts of this case, where the plaintiff was neither convicted nor sentenced and was habeas-ineligible, we hold that *Heck* is inapplicable, and poses no bar to plaintiffs' claims." *Id.* at 639. There is no indication the plaintiff entered a plea or served any form of sentence. Thus, the decision is too lacking in detail on these key factors to be of any use in the instant case.

In the Eighth Circuit case Plaintiff cited, *Mitchell v. Morton Cty.*, 28 F.4th 888 (8th Cir. 2022) (cited by Plaintiff as "*Mitchell v. Kirchmeier*," AOB, p. 15), the court declined to apply *Heck* where a peaceful protestor

had an eye socket shattered after police fired bean bag guns at him and he later sued for excessive force and retaliatory arrest. The plaintiff was arrested and charged with criminal trespass and obstruction of a government function, but entered into North Dakota's pretrial diversion program and the criminal case was dismissed. The opinion is silent on the plaintiff's underlying guilt (or lack thereof) for the charges against him. Notably, the court was concerned that "the mere existence of a criminal charge incompatible with the plaintiff's § 1983 claim" should not in and of itself trigger *Heck*. *Id.* at 896. That concern does not exist here, as Plaintiff was not only charged, but admitted guilt. Further, there is no indication in *Mitchell* that the plaintiff there served any sentence whatsoever, thus making the Eighth Circuit's stance on the issue inapplicable here.

In *Arroyo v. Starks*, 589 F.3d 1091 (10th Cir. 2009), which Plaintiff relied on (AOB, pp. 18-19), the Tenth Circuit held the *Heck* bar did not apply to claims of false arrest, false imprisonment, or a claim that the defendants had falsified plaintiff's signature on a pretrial diversion agreement. But, the case is inapposite because of the manner in which the state at issue, Kansas, treats pretrial diversion programs. In Kansas, a pretrial diversion program is explicitly, by statute, "the opposite of a conviction." *Id.* at 1095, citing Kan. Stat. Ann. § 22-2906(3), (4) (2008) and Kan. Stat. Ann.

§ 12-4413(c), (d) (2008).

Finally, in the Eleventh Circuit case Plaintiff cited, *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007) (AOB, p. 19), the court sided with that plaintiff's same circular argument regarding the absence of an underlying conviction due to a pretrial diversion program. But, the opinion similarly offers no information about whether the plaintiff there pled to any charge or served any sentence, merely stating, "[t]he charge against [one of the plaintiffs] was later dismissed. [The second plaintiff] entered into pretrial intervention, completed the program, and the charge against him was also dismissed." *Id.* at 1236. Thus, the one decision Plaintiff might claim supports his argument that his pretrial diversion program cleansed him of any conviction or sentence is really no support at all.

In sum, other Circuits have found pretrial diversion programs with key features analogous to those Plaintiff in the instant case participated in did not cleanse Plaintiff of his pled-to-crime, such that the *Heck* bar applies. The same result should hold here. As shown above, the Circuits that found to the contrary dealt with pretrial programs materially different from the one at bar.

### G.   Not Having Access To Federal Habeas Is Irrelevant.

Plaintiff raises a red herring argument that the *Heck* bar does not

43

apply because he did not have the opportunity to file a federal habeas petition. (AOB, pp. 41-44.) This argument fails. As we explained above (Section VII (C)), the ability to have one's conviction or sentence "called into question by a federal court's issuance of a writ of habeas corpus" (*Heck*, 512 U.S. at 486-487), is just one of *four separate and distinct ways* in which a criminal defendant can eliminate the *Heck* bar. A criminal defendant can succeed on any one or more of the other three ways without any access to habeas.

As a California Court of Appeal that looked at this issue explained, the majority of Circuits are in uniformity on this issue. *Fetters v. County of Los Angeles*, 243 Cal. App. 4th 825, 852 (2016) ("the First, Third, Fifth, Sixth, and Eighth Circuits have all concluded that the language in *Heck* makes it clear that where favorable termination cannot be shown, a petitioner is barred *regardless of whether a habeas corpus remedy is or ever was available*" (emphasis added, citing *White v. Gittens,* 121 F.3d 803, 806 (1st Cir. 1997); *Williams v. Consovoy*, 453 F.3d 173, 177–78 (3d Cir. 2006); *Gilles*, 427 F.3d at 209–10; *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000); *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995); and *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007).)

Even if Plaintiff could show his sentence was disposed of favorably to

meet one of the four criteria in *Heck* (which he cannot), Plaintiff's reliance on *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002) (AOB, p. 12), is misplaced for a number of reasons.

First, the result in *Nonnette* came about largely because while the plaintiff there diligently sought habeas relief while incarcerated, his prison sentence ended before any such relief could be granted, and the court determined *in that specific instance* application of the *Heck* bar would be patently unfair. *See Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006) ("*Nonnette* was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims when the individual immediately pursued relief after the incident giving rise to those claims and could not seek habeas relief only because of the shortness of his prison sentence").

Second, more recent Ninth Circuit decisions (and district courts that followed suit) have sharply curtailed *Nonnette*, effectively making it an island unto itself. *See, e.g., Guerrero,* 442 F.3d at 704-05 (*Nonette* is limited to affecting "only former prisoners challenging loss of good-time credits, revocation of parole or similar matters, not challenges to an underlying conviction"); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1192 (9th Cir. 2015) ("*Nonnette's* relief from *Heck* 'affects only former prisoners challenging loss of good-time credits, revocation of parole or similar

matters,' not challenges to an underlying conviction"); *Muric-Dorado v. Dzurenda*, 2019 U.S. Dist. LEXIS 205353, *7-9 (D. Nev. 2019) (same); *Mehmood v. Delaney*, 2017 U.S. Dist. LEXIS 79903, *8-9 (E.D. Cal. 2017) ("[t]he Ninth Circuit has carved an exception to the *Heck* doctrine for civil rights plaintiffs who claim they have been deprived of good-time credits but have been released, thereby preventing them from filing a petition for habeas corpus").

A plaintiff's access, or lack thereof, to habeas relief is thus irrelevant here. Plaintiff here is not challenging "loss of good-time credits, revocation of parole or similar matters," as *Nonnette's* holding has been narrowly defined to exempt only these categories of claims from the *Heck* bar.

Finally, as discussed above, given the patchwork nature of the basis for its holding, multiple other circuits have criticized, and not followed, *Nonnette. See Fetters*, 243 Cal. App. 4th at 852 (noting disagreement by the First, Third, Fifth, Sixth, and Eighth Circuits).

Plaintiff's federal claim cannot overcome the *Heck* bar, and this Court should affirm summary judgment.

## VIII.
## THIS COURT SHOULD AFFIRM
## DISMISSAL OF PLAINTIFF'S *MONELL* CLAIMS

A. There is No *Monell* Liability if There is
   No Underlying Constitutional Violation.

To prevail on a Section 1983 claim, the plaintiff must have been "deprived of a right 'secured by the Constitution and the laws' of the United States." *Oceanside Organics v. Cty. of San Diego*, 341 F. Supp. 3d 1129, 1136 (S.D. Cal. 2018), citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Here, however, Plaintiff's federal claim is barred by virtue of the *Heck* bar; therefore, as a matter of law he cannot show he was deprived of any constitutional right. *See Larin v. Cty. of Santa Barbara,* 2016 U.S. Dist. LEXIS 188187, *19-20 (C.D. Cal. 2016) ("[p]utting aside the question of whether plaintiff could show . . . the [public entity defendants] had a policy or custom that permitted officers to use excessive force, plaintiff's *Monell* and supervisory liability claims are in any event barred because under *Heck* he cannot demonstrate an underlying constitutional violation"). Thus, as many courts have held, "[b]ecause plaintiff's Fourth Amendment claim against [the defendant] is *Heck*-barred, his *Monell* claims . . . based on alleged policies and practices that led to the alleged Fourth Amendment violations necessarily fail as well." *Id. a*t 20; *accord, Foley v. Kaldenbach*, 2018 U.S. Dist. LEXIS 3217, *6 (S.D. Cal. 2018); *Walker v. Doe*, 2020 U.S.

Dist. LEXIS 46260, *15 (E.D. Cal. 2020); *Box v. Miovas*, 2015 U.S. Dist. LEXIS 55575, *18-21 (N.D. Cal. 2015); *Moschref v. Stratton*, 697 Fed. App'x 532, 533 (9th Cir. 2017).

Indeed, it is black-letter law there can be no *Monell* liability where there is no underlying constitutional violation. *Long v. City & County of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Tatum v. City and County of San Francisco*, 441 F.3d 1090 (9th Cir. 1986); *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). If a plaintiff cannot prove a constitutional violation by the individual defendant, the entity is not liable even if there is a constitutional defect in its policies because the constitutional defect "is quite beside the point." *City of Los Angeles*, 475 U.S. at 799; *accord, Johnson v. City of Seattle,* 474 F.3d 634, 638-39 (municipalities can be liable only "if there is, at a minimum, an underlying constitutional tort").

Therefore, the District Court properly dismissed Plaintiff's *Monell* claim against the City and SPD. This Court should affirm.

B.    The SPD is Not a "Person" For Purposes of 42 U.S.C. § 1983.

Plaintiff's *Monell* claim against the SPD fails because only a "person" can be sued under Section 1983. *Monell*, 436 U.S. at 690. "[M]unicipal police departments and bureaus are generally not considered 'persons'

48

within the meaning of 42 U.S.C. § 1983." *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005) (Ferguson, C.J., concurring) (*citing Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).) Numerous district courts have followed *Kama's* rationale in dismissing municipal departments from *Monell* claims. *See, e.g., Walker v. Child Protective Servs.,* 2022 U.S. Dist. LEXIS 92953, *9-10 (E.D. Cal. 2022); *Sussman v. San Diego Police Dep't*, 2022 U.S. Dist. LEXIS 59197, *29 (S.D. Cal. 2022); *Langley v. Twin Towers Corr. Facility*, 2021 U.S. Dist. LEXIS 253169, *10 (C.D. Cal. 2021).

Plaintiff is correct that an older case, *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988), held "[m]unicipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations." (AOB at p. 46). *Karim-Panahi* based its decision on *Shaw v. California Dep't of Alcoholic Bev. Control*, 788 F.2d 600, 605 (9th Cir. 1986), and both decisions were later affirmed in *Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001). As we discuss, this line of cases stands on shaky legal ground, thus making the premise of Plaintiff's argument questionable at best.

In *Streit*, the issue was a very narrow one not present in the instant case. The issue was whether the Los Angeles County Sheriff's Department

was a separate legal entity under § 1983 *only in the limited context of its function of managing jails*. *Streit*, 236 F.3d at 555-56 ("[b]ecause we conclude that the LASD, when implementing its policy of conducting prisoner release records checks, acts for the County in its capacity as the administrator of the Los Angeles County jails, we hold that both the LASD and the County are subject to liability under section 1983.").

*Karim-Panahi* failed to provide any analysis for its conclusion that both the City of Los Angeles and the LAPD could be held liable for the actions of the involved police officers. Instead, *Karim-Panahi* merely cited *Shaw* as a basis for its holding (839 F.2d at 624, n. 2), but *Shaw* <u>did not hold this</u>. Instead, *Shaw* merely held the doctrine of *respondeat superior* was inapplicable to a Section 1983 action. *Shaw*, 788 F.2d at 610. Thus, *Kama* and the cases following it are more on point.

Plaintiff correctly states an analysis of California law is required to determine whether a police department is a separate legal entity capable of being sued, and thus a "person" for purposes of Section 1983. (AOB, p. 48). Curiously, while Plaintiff raises this issue, Plaintiff then fails to provide any analysis of it under California law. This is because California law does not support Plaintiff.

A department of a municipality (some courts refer to these as

"divisions," "subdivisions," or "subsidiaries") is not a separate entity and does not have the capacity to be sued. *See, e.g.*, *Williams v. Lorentz*, 2018 U.S. Dist. Lexis 190023, *7 (N.D. Cal. 2018) ("actions against a subsidiary of a government entity must be filed against the parent itself," citing *Hovd v. Hayward Unified Sch. Dist.,* 74 Cal. App. 3d 470, 472 (1977)). Thus, in *Williams*, for example, the court held the plaintiff there could not sue the "Santa Clara Valley Medical Center" (the SCVMC) because it was a subsidiary of the County of Santa Clara; as the court held, "Plaintiff may not sue both SCVMC and the County, but only the County itself." *Williams*, 2018 U.S. Dist. Lexis 190023, at *8; *accord*, *Johnson v. Valley Med. Moorpark Lab Clinic & Valley Med. Hosp*. 2013 U.S. Dist. Lexis 202313, *4 (E.D. Ar. 2013) ("California law requires an action against a mere subsidiary be filed against the parent entity—in this case the County").

Here, therefore, because the SPD is not a separate legal entity, but rather a department of the City, and this case does not involve the narrow issue of jail management, the SPD is not a "person" subject to suit under Section 1983.

Because of the lack of clarity on this issue caused by *Karim-Panahi*, the Ninth Circuit should take this opportunity to clarify the law on this, affirming the concurring opinion in *Kama*, that police departments are not

"persons" for purposes of Section 1983. As a result, this Court should also affirm the District Court's dismissal of the SPD from Plaintiff's *Monell* claim.

C.    Plaintiff Failed to Allege a Proper
      <u>*Monell* Claim Against the City or the SPD.</u>

Irrespective of whether this Court takes Defendants up on the above invitation, it should affirm the District Court's dismissal of the City and the SPD. The District Court could have found Plaintiff's FAC failed to state a claim against them, because Plaintiff's FAC was based on only threadbare, conclusory *Monell* allegations. (ER-91—93, FAC, ¶¶ 24-31.)

A *Monell* plaintiff must show (1) he was deprived of a constitutional right; (2) the public entity had a policy or custom; (3) the policy or custom amounted to a deliberate indifference to his constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Deloney v. County of Fresno*, 2018 U.S. Dist. LEXIS 115617, *23 (E.D. Cal. 2018) (granting motion to dismiss *Monell* claim). "*Monell* liability only attaches if the policy at issue is (1) the moving force behind the violation, and (2) one of the four theories of *Monell* liability are present. For the four *Monell* liability theories, Plaintiff must plead that (1) the tort resulted from a custom, policy, or practice, (2) the tortfeasor was an official who fairly represents official policy, (3) an official with policymaking authority ratified

the tortfeasor's actions, or (4) the municipality failed to adequately train the tortfeasors." *Bagley v. City of Sunnyvale*, 2017 U.S. Dist. LEXIS 9948, *40 (N.D. Cal. 2017).

The plaintiff must allege facts to support that the entity "was on actual or constructive notice that constitutional violations were likely to result" from its policies or lack thereof, and must also explain how the particular policy or custom was deficient, and finally, how it caused the alleged harm. *Id.* at *34. A plaintiff that merely recites the elements of a *Monell* claim in his complaint, without pleading specific facts, has not sufficiently pled a *Monell* claim. *Sternberg v. Town of Danville*, 2015 U.S. Dist. LEXIS 169068, *13-*14 (N.D. Cal. 2015) (granting motion to dismiss *Monell* claim). Further, "[t]he circumstances under which courts will find that a failure to train imposes *Monell* liability 'generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about 'the specific scenario related to the violation.'" *Serna v. City of Bakersfield*, 2019 U.S. Dist. LEXIS 83826, *11 (E.D. Cal. 2019) citing *Williams v. County of Alameda*, 26 F.Supp.3d 925, 947 (N.D. Cal. 2014). Conclusory statements to the effect that had a particular employee been better or differently trained the harm would not have occurred are similarly insufficient. *Serna*, 2019 U.S. Dist. LEXIS

83826 at *18.

Further, a *Monell* claim fails unless the plaintiff alleges, with facts, that unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Plaintiff must allege facts to show an "official policy is responsible for a deprivation of rights protected by the Constitution"; *i.e.*, that the official policy caused the constitutional violation. *Monell*, 436 U.S. at 690-92. The plaintiff must also show both that the entity engaged in deliberate conduct and such conduct was the "moving force" behind the injury. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403-05 (1997).

The plaintiff must also show the policy amounted to "deliberate indifference" to his rights. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006), quoting *Canton v. Harris*, 489 U.S. 378, 388-91 (1989); and *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiff's claim is tantamount to his claim the SPD treated him—and only him—unfairly. (ER-87—89, FAC, ¶¶ 10-16.) That is insufficient. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (single incident does not show an unconstitutional policy or incident). Plaintiff generically asserts the SPD (and, by extension, the City) does not train its officers, and alternatively engages in blatantly racist behavior, but

he fails to allege "facts" to support these barebones claims. (ER-92—93, FAC, ¶¶ 26-31.) This is insufficient. *Sternberg*, U.S. Dist. LEXIS 169068 at *13-*14. Plaintiff's *Monell* claim was therefore properly subject to dismissal, and this Court should affirm the District Court's ruling.

## IX.
### THIS COURT SHOULD DISREGARD THE INSTITUTE FOR JUSTICE'S PROPOSED AMICUS BRIEF

Defendants' Response to the Institute for Justice's motion for leave to file an Amicus Brief showed why the Court should deny that motion. By order issued on April 19, 2022, the Court referred the motion to the panel that will consider the merits of the appeal. The panel has not yet ruled on the motion.

It appears the instant brief does not need to address proposed Amicus' Brief because this Court has not authorized it to be filed. However, research has not uncovered either a Federal Rules of Appellate Procedure Rule or Circuit Rule on point. Defendants wish to preserve the right to file a separate Answer to the proposed Amicus Brief if this Court authorizes it to be filed.

As Defendants' Response to that motion showed, there is no reason for the Court to authorize the filing of the proposed Amicus Brief. It makes the same arguments, and cites the same authorities, as Plaintiff's AOB.

The single "additional" case the Amicus Brief cites that does not

appear in the Plaintiff's AOB, *McDonough*, 139 S. Ct. 2149 (2019), is inapposite because it dealt primarily with the accrual of a Section 1983 action, which is not an issue on this appeal. Further, neither the parties nor the District Court cited *McDonough* below, and the proposed Amicus Brief itself concedes *McDonough* is inapplicable. Proposed Amicus Brief, p. 5 ("[t]he *McDonough* rule cannot apply here because the claims do not directly challenge the prosecution itself"). The fact that the proposed Amicus Brief did no more than raise an argument that neither any party nor the District Court raised, only to shoot the argument down, means this Court should disregard the proposed Amicus Brief, as Defendants' Response to the motion showed. It adds nothing of value to this Court's analysis.

## X.
## CONCLUSION

Plaintiff's excessive force claim is subject to the *Heck* bar and Plaintiff should not be allowed to pursue this claim. The District Court properly granted summary judgment on this defense.

As a result, Plaintiff's *Monell* claim against the City and the SPD also necessarily fails, and the Court should affirm that ruling.

Additionally, Plaintiff's *Monell* claim against the SPD fails because the SPD is not a "person" for purposes of 42 U.S.C. § 1983. Further, Plaintiff's *Monell* claim against both the City and the SPD fails because

Plaintiff failed to plausibly allege a *Monell* claim in his FAC.

This Court should affirm the District Court's rulings on Defendants' motion to dismiss and motion for summary judgment, and should grant such further relief as is appropriate.

Dated:  June 22, 2022

HERUM\CRABTREE\SUNTAG
A California Professional Corporation


By: /s/ *Dana A. Suntag*_____
    DANA A. SUNTAG
    JOSHUA J. STEVENS
    Attorneys for All
    Defendants/Appellees

## STATEMENT OF RELATED CASES

Appellees are unaware of any related cases.

Dated:  June 22, 2022

HERUM\CRABTREE\SUNTAG
A California Professional Corporation


By: /s/ *Dana A. Suntag*
    DANA A. SUNTAG
    JOSHUA J. STEVENS
    Attorneys for All
    Defendants/Appellees

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 21-16929

I am the attorney or self-represented party.

**This brief contains** | 12,598 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated |      |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Joshua J. Stevens | **Date** | June 22, 2022
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**         *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I certify that on June 22, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  June 22, 2022            HERUM\CRABTREE\SUNTAG
                                   A California Professional Corporation

                                 By: */s/ Kayla Franco*_____
                                    KAYLA FRANCO, secretary
                                    Attorneys for All
                                    Defendants/Appellees

## ADDENDUM

Except for the following, all applicable statutes, etc. are contained in the brief or addendum of Defendants/Appellees' Answering Brief.

**Statutes**

Ca. Pen. Code § 148

Ca. Pen. Code § 1016

Ca. Pen. Code § 1018

42 U.S.C. § 1983

**Black's Law Dictionary (10th ed. 2014)**

Page 569 - "dismissal"

Page 1209 - "no contest"

Page 1428 - "punishment"

Page 1569 - "sentence"

Page 1782 - "vacate"

Dated: June 22, 2022     HERUM\CRABTREE\SUNTAG
             A California Professional Corporation

             By: */s/ Dana A. Suntag*_____
              DANA A. SUNTAG
              JOSHUA J. STEVENS
              Attorneys for All
              Defendants/Appellees

### *Cal Pen Code § 148*

Deering's California Codes are current through Chapter 19 of the 2022 Regular Session.

*Deering's California Codes Annotated > PENAL CODE (§§ 1 — 34370) > Part 1 Of Crimes and Punishments (Titles 1 — 17) > Title 7 Of Crimes Against Public Justice (Chs. 1 — 11) > Chapter 7 Other Offenses Against Public Justice (§§ 142 — 181)*

## § 148. Resisting public or peace officers or emergency medical technicians in discharge of their duties; Removal of weapon from person or presence of public or peace officer

**(a)**

**(1)** Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with *Section 1797) of the Health and Safety Code*, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

**(2)** Except as provided by subdivision (d) of *Section 653t*, every person who knowingly and maliciously interrupts, disrupts, impedes, or otherwise interferes with the transmission of a communication over a public safety radio frequency shall be punished by a fine not exceeding one thousand dollars ($1,000), imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment.

**(b)** Every person who, during the commission of any offense described in subdivision (a), removes or takes any weapon, other than a firearm, from the person of, or immediate presence of, a public officer or peace officer shall be punished by imprisonment in a county jail not to exceed one year or pursuant to subdivision (h) of *Section 1170*.

**(c)** Every person who, during the commission of any offense described in subdivision (a), removes or takes a firearm from the person of, or immediate presence of, a public officer or peace officer shall be punished by imprisonment pursuant to subdivision (h) of *Section 1170*.

**(d)** Except as provided in subdivision (c) and notwithstanding subdivision (a) of *Section 489*, every person who removes or takes without intent to permanently deprive, or who attempts to remove or take a firearm from the person of, or immediate presence of, a public officer or peace officer, while the officer is engaged in the performance of his or her lawful duties, shall be punished by imprisonment in a county jail not to exceed one year or pursuant to subdivision (h) of *Section 1170*.

In order to prove a violation of this subdivision, the prosecution shall establish that the defendant had the specific intent to remove or take the firearm by demonstrating that any of the following direct, but ineffectual, acts occurred:

**(1)** The officer's holster strap was unfastened by the defendant.

**(2)** The firearm was partially removed from the officer's holster by the defendant.

**(3)** The firearm safety was released by the defendant.

**(4)** An independent witness corroborates that the defendant stated that he or she intended to remove the firearm and the defendant actually touched the firearm.

Joshua Stevens

Cal Pen Code § 148

**(5)** An independent witness corroborates that the defendant actually had his or her hand on the firearm and tried to take the firearm away from the officer who was holding it.

**(6)** The defendant's fingerprint was found on the firearm or holster.

**(7)** Physical evidence authenticated by a scientifically verifiable procedure established that the defendant touched the firearm.

**(8)** In the course of any struggle, the officer's firearm fell and the defendant attempted to pick it up.

**(e)** A person shall not be convicted of a violation of subdivision (a) in addition to a conviction of a violation of subdivision (b), (c), or (d) when the resistance, delay, or obstruction, and the removal or taking of the weapon or firearm or attempt thereof, was committed against the same public officer, peace officer, or emergency medical technician. A person may be convicted of multiple violations of this section if more than one public officer, peace officer, or emergency medical technician are victims.

**(f)** This section shall not apply if the public officer, peace officer, or emergency medical technician is disarmed while engaged in a criminal act.

**(g)** The fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a), nor does it constitute reasonable suspicion to detain the person or probable cause to arrest the person.

## History

Enacted 1872. Amended Stats 1957 ch 139 § 30; Stats 1983 ch 73 § 1; *Stats 1987 ch 257 § 1*; *Stats 1989 ch 1005 § 1*; *Stats 1990 ch 1181 § 1 (AB 1925)*; *Stats 1997 ch 111 § 1 (SB 282)*, ch 464 § 1 (SB 57); *Stats 1999 ch 853 § 8 (SB 832)*; *Stats 2011 ch 15 § 258 (AB 109)*, effective April 4, 2011, operative October 1, 2011; *Stats 2015 ch 177 § 2 (SB 411)*, effective January 1, 2016.

Annotations

## Notes

Derivation:

Editor's Notes—

Amendments:

Note—

Derivation:

(a) Crimes and Punishment Act § 92 (Stats 1850 ch 99 § 92 p 240), as amended Stats 1860 ch 156 § 1.

(b) Field's Draft NY Pen C § 180.

(c) NY Pen C § 124.

Editor's Notes—

## *Cal Pen Code § 1016*

Deering's California Codes are current through Chapter 19 of the 2022 Regular Session.

*Deering's California Codes Annotated  >  PENAL CODE (§§ 1 — 34370)  >  Part 2 Of Criminal Procedure (§§ 681 — 1620)  >  Title 6 Pleadings and Proceedings Before Trial (Chs. 1 — 10)  > Chapter 4 Plea (§§ 1016 — 1027)*

# § 1016. Permissible pleas; Effect of plea of nolo contendere; Presumption of sanity

There are six kinds of pleas to an indictment or an information, or to a complaint charging a misdemeanor or infraction:

**1.** Guilty.

**2.** Not guilty.

**3.** Nolo contendere, subject to the approval of the court. The court shall ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based.

**4.** A former judgment of conviction or acquittal of the offense charged.

**5.** Once in jeopardy.

**6.** Not guilty by reason of insanity.

A defendant who does not plead guilty may enter one or more of the other pleas. A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged; provided, that the court may for good cause shown allow a change of plea at any time before the commencement of the trial. A defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the offense charged.

## History

Enacted Stats 1872. Amended Code Amdts 1880 ch 118 § 2; Stats 1927 ch 677 § 1; Stats 1951 ch 1674 § 81; Stats 1963 ch 2118 § 1; Stats 1975 ch 687 § 1; Stats 1976 ch 1088 § 1; Stats 1982 ch 390 § 3; *Stats 1998 ch 931 § 385 (SB 2139)*, effective September 28, 1998.

Annotations

## Notes

**Derivation:**

## *Cal Pen Code § 1018*

Deering's California Codes are current through Chapter 19 of the 2022 Regular Session.

*Deering's California Codes Annotated > PENAL CODE (§§ 1 — 34370) > Part 2 Of Criminal Procedure (§§ 681 — 1620) > Title 6 Pleadings and Proceedings Before Trial (Chs. 1 — 10) > Chapter 4 Plea (§§ 1016 — 1027)*

## § 1018. Presence of defendant when plea is made; Assistance of counsel; Withdrawal of plea; Pleas by corporations

Unless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court. No plea of guilty of a felony for which the maximum punishment is death, or life imprisonment without the possibility of parole, shall be received from a defendant who does not appear with counsel, nor shall that plea be received without the consent of the defendant's counsel. No plea of guilty of a felony for which the maximum punishment is not death or life imprisonment without the possibility of parole shall be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him or her of the right to counsel and unless the court shall find that the defendant understands the right to counsel and freely waives it, and then only if the defendant has expressly stated in open court, to the court, that he or she does not wish to be represented by counsel. On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. Upon indictment or information against a corporation a plea of guilty may be put in by counsel. This section shall be liberally construed to effect these objects and to promote justice.

## History

Enacted Stats 1872. Amended Code Amdts 1880 ch 47 § 51; Stats 1949 ch 1310 § 1; Stats 1951 ch 858 § 1; Stats 1973 ch 718 § 1, ch 719 § 11; Stats 1976 ch 819 § 1; Stats 1977 ch 316 § 17, effective August 11, 1977; *Stats 1990 ch 632 § 3 (AB 125)*; *Stats 1991 ch 421 § 1 (AB 2174)*.

Annotations

## Notes

**Derivation:**

**Amendments:**

**Derivation:**

(a) Criminal Practice Act §§ 301, 302 (Stats 1851 ch 29 §§ 301, 302).

(b) Stats 1850 ch 119 §§ 322, 323.

## *42 USCS § 1983, Part 1 of 16*

Current through Public Law 117-130, approved June 6, 2022.

*United States Code Service > TITLE 42. THE PUBLIC HEALTH AND WELFARE (Chs. 1 — 162) > CHAPTER 21. CIVIL RIGHTS (§§ 1981 — 2000h-6) > GENERALLY (§§ 1981 — 1996b)*

## § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## History

**HISTORY:**

R. S. § 1979; Dec. 29, 1979, *P. L. 96-170*, § 1, *93 Stat. 1284*; Oct. 19, 1996, *P. L. 104-317*, Title III, § 309(c), *110 Stat. 3853*.

Annotations

## Notes

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

   **Explanatory notes:**

   **Amendment Notes**

   **1979.**

   **1996.**

   **Other provisions:**

**Explanatory notes:**

This section formerly appeared as  8 USC § 43.

R.S. § 1979 was derived from Act April 20, 1871, ch 22, § 1,  *17 Stat. 13*.

# BLACK'S
# LAW
# DICTIONARY

### DELUXE TENTH EDITION

### BRYAN A. GARNER
#### EDITOR IN CHIEF

**disintermediation.** (1966) **1.** The process of bank depositors' withdrawing their funds from accounts with low interest rates to put them into investments that pay higher returns. **2.** The selling of products directly to consumers through the Internet rather than selling first to a wholesaler and then to a shop — so that manufacturers are brought directly into contact with end users.

**disinvestment,** *n.* (1936) **1.** The consumption of capital. **2.** The taking of one's money out of a company by selling one's shares in it; esp., the withdrawal of investments, often on political grounds. — Also termed (in sense 2) *divestment.* — **disinvest,** *vb.*

**disjoinder** (dis-**joyn**-dər). (1936) The undoing of the joinder of parties or claims. See JOINDER. Cf. MISJOINDER (1); NONJOINDER (1).

*disjuncta* (dis-**jəngk**-tə), *n. pl.* [Latin] *Roman & civil law.* Things (usu. words or phrases) that are separated or opposed. — Also spelled *disiuncta.* Cf. CONJUNCTA.

*disjunctim* (dis-**jəngk**-təm), *adv.* [Latin] *Roman law.* Separately; severally. ● A condition imposed *disjunctim,* for example, would bind the persons severally, rather than jointly. — Also spelled *disiunctim.* Cf. CONJUNCTIM.

**disjunctive allegation.** See ALLEGATION.

**disjunctive condition.** See CONDITION (2).

**disjunctive denial.** See DENIAL (3).

**disjunctive obligation.** See *alternative obligation* under OBLIGATION.

*disme* (dɪm), *n.* [Law French] (17c) A tithe; a tenth part, as in a tithe due the clergy equal to the tenth of all spiritual livings as required by the statute 25 Edw. 3, st. 7. ● This is the Law French equivalent to the Latin *decimae.* It was once the spelling of the American 10-cent piece, the *dime.* See DECIMAE. Pl. *dismes.*

**dismember,** *vb.* (13c) **1.** To cut a body into pieces and tear it apart, esp. by detaching all limbs. **2.** To divide a county, area, or organization into smaller parts.

**dismemberment.** (18c) **1.** The cutting off of a limb or body part. **2.** *Int'l law.* The disappearance of a country as a result of a treaty or an annexation, whereby it becomes part of one or more other countries. **3.** *Int'l law.* The reduction of a country's territory by annexation or cession, or the secession of one part. **4.** *Int'l law.* The extinguishment of a country and the creation of two or more new countries from the former country's territory.

**dismemberments of ownership.** (1882) *Civil law.* The three elements composing the right of ownership, namely the usus, the fructus, and the abusus. ● The right of ownership may be dismembered and its components conveyed in the form of independent real rights, such as the right of use, the right of usufruct, and the right of security. See ABUSUS; FRUCTUS; USUS.

**dismiss,** *vb.* (15c) **1.** To send (something) away; specif., to terminate (an action or claim) without further hearing, esp. before the trial of the issues involved. **2.** To release or discharge (a person) from employment. See DISMISSAL.

==**dismissal,** *n.* (1885) **1.** Termination of an action or claim without further hearing, esp. before the trial of the issues involved; esp., a judge's decision to stop a court case.==

▸ **constructive dismissal.** (1908) See *constructive discharge* under DISCHARGE (7).

▸ **dismissal agreed.** A court's dismissal of a lawsuit with the acquiescence of all parties. ● Among other possibilities, the parties may have settled out of court or chosen to have their dispute arbitrated or mediated. — Also termed *agreed dismissal.*

▸ **dismissal for failure to prosecute.** See *dismissal for want of prosecution.*

▸ **dismissal for lack of prosecution.** See *dismissal for want of prosecution.*

▸ **dismissal for want of equity.** (1859) A court's dismissal of a lawsuit on substantive, rather than procedural, grounds, usu. because the plaintiff's allegations are found to be untrue or because the plaintiff's pleading does not state an adequate claim.

▸ **dismissal for want of prosecution.** (1831) A court's dismissal of a lawsuit because the plaintiff has failed to pursue the case diligently toward completion. — Abbr. DWOP. — Also termed *dismissal for failure to prosecute; dismissal for lack of prosecution.*

▸ **dismissal without prejudice.** (1831) A dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period. See WITHOUT PREJUDICE.

▸ **dismissal with prejudice.** (1898) A dismissal, usu. after an adjudication on the merits, barring the plaintiff from prosecuting any later lawsuit on the same claim. ● If, after a dismissal with prejudice, the plaintiff files a later suit on the same claim, the defendant in the later suit can assert the defense of res judicata (claim preclusion). See RES JUDICATA; WITH PREJUDICE.

▸ **involuntary dismissal.** (1911) A court's dismissal of a lawsuit because the plaintiff failed to prosecute or failed to comply with a procedural rule or court order. Fed. R. Civ. P. 41(b).

▸ **voluntary dismissal.** (1834) A plaintiff's dismissal of a lawsuit at the plaintiff's own request or by stipulation of all the parties. Fed. R. Civ. P. 41(a).

**2.** A release or discharge from employment. See DISCHARGE (7).

▸ **dismissal for cause.** (1877) A dismissal of a contract employee for a reason that the law or public policy has recognized as sufficient to warrant the employee's removal.

**3.** *Military law.* A court-martial punishment for an officer, commissioned warrant officer, cadet, or midshipman, consisting of separation from the armed services with dishonor. ● A dismissal can be given only by a general court-martial and is considered the equivalent of a dishonorable discharge. — **dismiss,** *vb.*

**dismissal compensation.** See SEVERANCE PAY.

**dismissal order.** See ORDER (2).

**dismissed for want of equity.** (18c) (Of a case) removed from the court's docket for substantive reasons, usu. because the plaintiff's allegations are found to be untrue or because the plaintiff's pleading does not state an adequate claim. See *dismissal for want of equity* under DISMISSAL (1).

**dismissed for want of prosecution.** (18c) (Of a case) removed from the court's docket because the plaintiff has

**no-constitutional-doubt canon.** See CONSTITUTIONAL-DOUBT CANON.

**no-contact order.** See STAY-AWAY ORDER.

**no contest.** (1931) A criminal defendant's plea that, while not admitting guilt, the defendant will not dispute the charge. • This plea is often preferable to a guilty plea, which can be used against the defendant in a later civil lawsuit. — Also termed *no-contest plea*; *nolo contendere*; *non vult contendere*.

**no-contest clause.** (1929) A provision designed to threaten one into action or inaction; esp., a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will. — Also termed *in terrorem clause*; *noncontest clause*; *terrorem clause*; *anticontest clause*; *forfeiture clause*.

**noctanter** (nok-**tan**-tər), *n.* [Latin "by night"] *Hist.* A chancery writ issued to a sheriff as a first step in the recovery of damages for destroying a ditch or hedge. • The neighboring villagers (vills) were held liable for the damages unless they indicted the offender.

*noctem de firma* (**nok**-təm dee fər-mə), *n.* [Law Latin "night of duty (payable)"] (17c) *Hist.* The duty or custom of providing entertainment or provisions for a night. • At the time of the Norman Conquest, this was the duty or custom of entertaining the king for one night. — Also termed *noctes*; *firma noctis*.

*nocumentum* (nok-yə-**men**-təm). [fr. Latin *nocere* "to harm"] *Hist.* A nuisance. • There was no remedy at law for a nuisance causing only property damage, but there was a remedy for a nuisance causing injury.

**no cure, no pay.** (1846) *Maritime law.* The common-law principle that compensation for salvage must come from the material salvaged, and that if no material is salvaged there can be no compensation. • By contrast, civil-law tradition awards compensation even for a failed effort. Cf. ASSISTANCE.

**no-doc loan.** See LOAN.

**no-duty,** *n.* (1919) Liberty not to do an act. — Also termed *liberty not.*

**no-duty doctrine.** (1966) *Torts.* **1.** The rule that a defendant who owes no duty to the plaintiff is not liable for the plaintiff's injury. **2.** The rule that the owner or possessor of property has no duty to warn or protect an invitee from known or obvious hazards.

*Noerr–Pennington* **doctrine.** (1967) The principle that the First Amendment shields from liability (esp. under antitrust laws) companies that join together to lobby the government. • The doctrine derives from a line of Supreme Court cases beginning with *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585 (1965).

**no evidence.** (15c) **1.** The lack of a legally sufficient evidentiary basis for a reasonable fact-finder to rule in favor of the party who bears the burden of proof <there is no evidence in the record about his whereabouts at midnight>. • Under the Federal Rules of Civil Procedure, a party can move for judgment as a matter of law to claim that the other party — who bears the burden of proof — has been fully heard and has not offered sufficient evidence to prove one or more essential elements of the suit or defense. Fed. R. Civ. P. 50. Though such a contention is usu. referred to as a no-evidence motion, the issue is not whether there was actually no evidence, but rather whether the evidence was sufficient for the fact-finder to be able to reasonably rule in favor of the other party.

> "Since judgment as a matter of law deprives the party opposing the motion of a determination of the facts by a jury, it should be granted cautiously and sparingly. Nevertheless, the federal courts do not follow the rule that a scintilla of evidence is enough to create an issue for the jury. The question is not whether there is literally no evidence upon which the jury properly could find a verdict for that party." 9A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2524, at 252–54 (2d ed. 1995).

**2.** Evidence that has no value in an attempt to prove a matter in issue <that testimony is no evidence of an alibi>.

**no-eyewitness rule.** (1956) *Torts.* The largely defunct principle that if no direct evidence shows what a dead person did to avoid an accident, the jury may infer that the person acted with ordinary care for his or her own safety. • In a jurisdiction where the rule persists, a plaintiff in a survival or wrongful-death action can assert the rule to counter a defense of contributory negligence.

**no-fault,** *adj.* (1967) Of, relating to, or involving a claim that is adjudicated without any determination that a party is blameworthy <no-fault divorce>.

**no-fault auto insurance.** See INSURANCE.

**no-fault divorce.** See DIVORCE.

**no funds.** An indorsement marked on a check when there are insufficient funds in the account to cover the check.

**no-further-representation clause.** (2005) A contractual provision, usu. in a settlement agreement, prohibiting the plaintiff's attorney from representing future clients who have the same or a similar claim against the defendant. • Such a clause is thought to be void as against public policy.

> "If your standard settlement papers include a clause prohibiting opposing counsel from representing future clients with the same claim, you're violating ethics rules. Typically a defendant's tool, this provision — known as a no-further-representation clause — is popular in class action and mass product-liability settlements. But a little-known ethics rule prohibits lawyers from agreeing, or even offering to agree, to a restriction on an attorney's right to practice law." Leslie A. Gordon, *Prohibited Provisions: No-Further-Representation Clauses May Be Advantageous, but They're Also Unethical*, 91 ABA J. 18, 18 (Apr. 2005).

**no goods.** See NULLA BONA.

**NOIBN.** *abbr.* NOT OTHERWISE INDEXED BY NAME.

**noise easement.** See EASEMENT.

**noisy withdrawal.** A lawyer's publicly announced abandonment of legal representation coupled with a renunciation of work product and sometimes the informing of authorities about the client's wrongdoing. See WITHDRAWAL (2).

**no-knock search.** See SEARCH (1).

**no-knock search warrant.** See SEARCH WARRANT.

**NOL.** See *net operating loss* under LOSS.

**Nolan Act.** *Hist. Patents.* A post-World War I statute that extended the U.S. patenting deadlines for citizens of former enemy countries. • A similar measure, the Boykin Act, was passed after World War II.

**public wrong**

**public wrong.** See WRONG.

**publish,** *vb.* (14c) **1.** To distribute copies (of a work) to the public. **2.** To communicate (defamatory words) to someone other than the person defamed. See INTENT TO PUBLISH. **3.** To declare (a will) to be the true expression of one's testamentary intent. **4.** To make (evidence) available to a jury during trial. See PUBLICATION.

**publisher-neutral citation.** See CITATION (3).

**PUC,** *abbr.* Public Utilities Commission.

**PUD,** *abbr.* **1.** PLANNED-UNIT DEVELOPMENT. **2.** See *municipal utility district* under DISTRICT.

**pudzeld.** See WOOD-GELD.

**pueblo** (pweb-loh). [Spanish] (1808) A town or village, esp. in the southwestern United States.

**puer** (pyoo-ər), *n.* [Latin] *Roman law.* **1.** A child, esp. a boy. **2.** A male slave. Pl. *pueri* (pyoor-ī).

**puerility** (pyoo-ə-ril-ə-tee *or* pyuu-ril-ə-tee). (16c) *Civil law.* A child's status between infancy and puberty.

**pueritia** (pyoo-ə-rish-ee-ə), *n.* [Latin] *Roman law.* Childhood, esp. up to the age of 17, the minimum age for pleading before a magistrate. Cf. AETAS INFANTIAE PROXIMA; AETAS PUBERTATI PROXIMA.

**puffer.** See BY-BIDDER.

**puffing.** (18c) **1.** The expression of an exaggerated opinion — as opposed to a factual misrepresentation — with the intent to sell a good or service. ● Puffing involves expressing opinions, not asserting something as a fact. Although there is some leeway in puffing goods, a seller may not misrepresent them or say that they have attributes that they do not possess. — Also termed *puffery; sales puffery; dealer's talk; sales talk.*

> "'Dealer's puffing,' so long as it remains in the realm of opinion or belief, will not support a conviction of false pretenses however extravagant the statements." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 369 (3d ed. 1982).

**2.** Fictitious or secret bidding at an auction by or on behalf of a seller; BY-BIDDING. — Also termed *puffing of a bid.*

**Pugh clause.** (1958) *Oil & gas.* A provision in an oil-and-gas lease modifying the effect of most lease-pooling clauses by severing pooled portions of the lease from unpooled portions of the lease. ● Drilling or production on a pooled portion will not maintain the lease for the unpooled portions. The clause is named for Lawrence G. Pugh, an attorney from Cowley, Louisiana, who drafted the first version in 1947. In Texas it is termed a Freestone rider. See POOLING.

**PUHCA,** *abbr.* PUBLIC UTILITY HOLDING COMPANY ACT.

**puis** (pwis *or* pwee). [French] Afterward; since.

**puis darrein continuance** (pwis dar-ayn kan-tin-yoo-ənts). [Law French "since the last continuance"] See *plea puis darrein continuance* under PLEA (3).

**puisne** (pyoo-nee), *adj.* [Law French] (16c) Junior in rank; subordinate.

**puisne judge.** See JUDGE.

**puisne mortgage.** See *junior mortgage* under MORTGAGE.

**Pullman abstention.** See ABSTENTION.

**pulsare** (pəl-sair-ee), *vb.* [Latin] *Civil law.* To accuse or charge; to proceed against at law.

**pulsator** (pəl-say-tər). (18c) *Civil law.* A plaintiff or actor.

**pumping unit.** (1933) *Oil & gas.* Equipment used to pump oil to the surface when the pressure difference between the formation and the borehole is not strong enough to cause oil to rise to the surface. — Also termed *pumpjack; horsehead.*

**pumpjack.** See PUMPING UNIT.

**punch list.** A list of usu. minor jobs that will complete a project; esp., a roster of small but important jobs yet to be done on a construction site but necessary to be done before the construction can be considered completely finished. — Also termed *snagging list.*

**punctuation canon.** The interpretive doctrine that the punctuation in a legal instrument is a permissible indicator of meaning.

**punctum temporis** (pəngk-təm tem-pə-ris). [Latin] (17c) A point of time; an instant.

**punies** (pyoo-neez). (1986) *Slang.* Punitive damages. See *punitive damages* under DAMAGES.

**punishable,** *adj.* (15c) **1.** (Of a person) subject to a punishment <there is no dispute that Jackson remains punishable for these offenses>. **2.** (Of a crime or tort) giving rise to a specified punishment <a felony punishable by imprisonment for up to 20 years>. — **punishability,** *n.*

**punishment,** *n.* (15c) **1.** A sanction — such as a fine, penalty, confinement, or loss of property, right, or privilege — assessed against a person who has violated the law. See SENTENCE.

> "Punishment in all its forms is a loss of rights or advantages consequent on a breach of law. When it loses this quality it degenerates into an arbitrary act of violence that can produce nothing but bad social effects." Glanville Williams, *Criminal Law: The General Part* 575 (2d ed. 1961).

> "In the treatment of offenders there is a clear and unmistakable line of division between the function of the judge and that of the penologist. I should modify that: the law is clear only if it is first made clear in what sense the word 'treatment' is being used. For in this context the word can be used in two senses, one wide and the other narrow. Let me take the wide meaning first. The object of a sentence is to impose punishment. For 'punishment,' a word which to many connotes nothing but retribution, the softer word 'treatment' is now frequently substituted; this is the wider meaning. The substitution is made, I suppose, partly as a concession to the school which holds that crime is caused by mental sickness, but more justifiably as a reminder that there are other methods of dealing with criminal tendencies besides making the consequences of crime unpleasant." Patrick Devlin, *The Judge* 32–33 (1979).

▸ **capital punishment.** See CAPITAL PUNISHMENT.

▸ **collective punishment.** See COLLECTIVE PUNISHMENT.

▸ **corporal punishment.** (16c) Physical punishment; punishment that is inflicted on the body (including imprisonment).

> "Past forms of corporal punishment included branding, blinding, mutilation, amputation, and the use of the pillory and the stocks. It was also an element in such violent modes of execution as drawing, stoning, burning, hanging, and drawing and quartering . . . . In most parts of Europe and in the United States, such savage penalties were replaced by imprisonment during the late eighteenth and early nineteenth centuries, although capital punishment itself remained. Physical chastisement became less frequent until, in the twentieth century, corporal punishment was either eliminated as a legal penalty or restricted to beating with a birch rod, cane, whip, or other scourge. In ordinary usage the term now refers to such penal flagellation."

service. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 766, 96 S.Ct. 1251, 1265 (1976).

▸ **competitive seniority.** (1969) The status used to determine an employee's level of benefits, such as pension benefits, vacation time, or promotions or nondemotions, measured by the quality of the employee's service and performance. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 766-67, 96 S.Ct. 1251, 1265-66 (1976).

**seniority system.** (1850) *Employment law.* Any arrangement that recognizes length of service in making decisions about job layoffs and promotions or other advancements.

**senior judge.** See JUDGE.

**senior lien.** See LIEN.

**senior mortgage.** See MORTGAGE.

**senior partner.** See PARTNER.

**senior party.** (1897) *Intellectual property.* In an interference proceeding, the first person to file an application for a property's legal protection, e.g., an invention patent or a trademark registration. ● In the United States, merely being the first to file does not entitle the party to the protection. The proceeding's administrator also takes other factors into account. For instance, in a patent-interference proceeding the invention's conception date and the inventor's diligence in reducing the invention to practice are relevant factors. Priority in the filing date is prima facie evidence that the senior party is the first inventor, so the challenger has the burden of proof. Cf. JUNIOR PARTY.

**senior security.** See SECURITY (4).

**senior status.** (1970) The employment condition of a semi-retired judge who continues to perform certain judicial duties that the judge is willing and able to undertake.

**senior user.** (1939) *Trademarks.* The first person to use a mark. ● That person is usu. found to be the mark's owner. — Also termed *first user.* Cf. JUNIOR USER.

**senseless,** *adj.* (16c) **1.** Occurring or done for no good reason or rational purpose; contrary to reason and good sense <a senseless waste of life>. **2.** Bereft of bodily feeling; unconscious or insentient <beaten senseless>.

**sensible,** *adj.* (14c) **1.** (Of a person) reasonable, practical, and showing good judgment; possessed of sound sense and rationality <a sensible seller>. **2.** (Of a product, approach, or other thing) suitable for a particular purpose, and designed for practicality rather than fashionable appearance <a sensible plan>. **3.** Perceptible through the senses; appreciable <visible and sensible things>. **4.** Capable of being acted on through the feelings or emotions <sensible to embarrassment>. **5.** Fully aware; cognizant <sensible of one's own cognition>. **6.** Sensitive to minute changes <sensible of variations in temperature>.

**sensitive information.** Information that could bring harm if not kept secret, such as trade secrets and scandalous personal information.

**sensitivity training.** (1956) One or more instructional sessions for management and employees, designed to counteract the callous treatment of others, esp. women and minorities, in the workplace.

**sensus** (sen-səs). [Latin] *Hist.* Sense; meaning; signification. ● The word appears in its inflected form in phrases such as *malo sensu* ("an evil sense"), *mitiori sensu* ("in a milder sense"), and *sensu honesto* ("in an honest sense").

***sensu stricto*** (sen[t]-soo **strik**-too), *adv.* [Latin] In the strict sense of the words; strictly speaking.

**sentence,** *n.* (14c) *Criminal law.* The judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer <a sentence of 20 years in prison>. *See* Fed. R. Crim. P. 32. — Also termed *judgment of conviction.* — **sentence,** *vb.*

▸ **accumulative sentences.** See *consecutive sentences.*

▸ **aggregate sentence.** (1879) The total sentence imposed for multiple convictions, reflecting appropriate calculations for consecutive as opposed to cumulative periods, reductions for time already served, and statutory limitations.

▸ **alternative sentence.** (1841) A sentence other than imprisonment. ● Examples include community service and victim restitution. — Also termed *creative sentence.*

▸ **back-to-back sentences.** See *consecutive sentences.*

▸ **blended sentence.** (1996) In a juvenile-delinquency disposition, a sanction that combines delinquency sanctions and criminal punishment.

▸ **concurrent sentences.** (1905) Two or more sentences of jail time to be served simultaneously. ● For example, if a convicted criminal receives concurrent sentences of 5 years and 15 years, the total amount of jail time is 15 years.

▸ **conditional sentence.** (1843) A sentence of confinement if the convicted criminal fails to perform the conditions of probation.

▸ **consecutive sentences.** (1844) Two or more sentences of jail time to be served in sequence. ● For example, if a convicted criminal receives consecutive sentences of 20 years and 5 years, the total amount of jail time is 25 years. — Also termed *cumulative sentences; back-to-back sentences; accumulative sentences.*

▸ **consolidated sentence.** See *general sentence.*

▸ **creative sentence.** See *alternative sentence.*

▸ **custodial sentence.** See PRISON SENTENCE.

▸ **death sentence.** (1811) A sentence that imposes the death penalty. See Model Penal Code § 210.6. — Also termed *judgment of blood.* See DEATH PENALTY.

▸ **deferred sentence.** (1915) A sentence that will not be carried out if the convicted criminal meets certain requirements, such as complying with conditions of probation.

▸ **definite sentence.** (16c) **1.** See *determinate sentence* (1). **2.** A fixed jail term of relatively short duration, usu. one year or less, often with the possibility of an early release for good behavior.

▸ **delayed sentence.** (1906) A sentence that is not imposed immediately after conviction, thereby allowing the convicted criminal to satisfy the court (usu. by complying with certain restrictions or conditions during the delay period) that probation is preferable to a prison sentence.

▸ **determinate sentence.** (1885) **1.** A jail term of a specified duration. **2.** A jail term of a relatively long duration, usu. more than a year, often after a conviction of a

# V

**v.** *abbr.* **1.** VERSUS. — Also abbreviated *vs.* **2.** Volume. — Also abbreviated *vol.* **3.** Verb. — Also abbreviated *vb.* **4.** (*cap.*) Victoria — the Queen of England from 1837 to 1901. **5.** *Vide.* ● This Latin term, meaning "see," is used in phrases such as *quod vide* ("which see," abbreviated *q.v.*). **6.** *Voce* (**voh-see**). ● This Latin term means "voice."

**VA.** *abbr.* (1945) DEPARTMENT OF VETERANS AFFAIRS.

**vacancy,** *n.* (16c) **1.** The quality, state, or condition of being unoccupied, esp. in reference to an office, post, or piece of property. **2.** The time during which an office, post, or piece of property is not occupied. **3.** An unoccupied office, post, or piece of property; an empty place. ● Although the term sometimes refers to an office or post that is temporarily filled, the more usual reference is to an office or post that is unfilled even temporarily. An officer's misconduct does not create a vacancy even if a suspension occurs; a vacancy, properly speaking, does not occur until the officer is officially removed. **4.** A job opening; a position that has not been filled.

**vacancy clause.** (1877) *Insurance.* A special indorsement allowing premises to be unoccupied beyond the period stipulated in the original insurance policy, so that the insurance remains in effect during policy extensions, often for a reduced amount.

**vacant,** *adj.* (13c) **1.** Empty; unoccupied <a vacant office>. ● Courts have sometimes distinguished *vacant* from *unoccupied,* holding that *vacant* means completely empty while *unoccupied* means not routinely characterized by the presence of human beings. **2.** Absolutely free, unclaimed, and unoccupied <vacant land>. **3.** (Of an estate) abandoned; having no heir or claimant. — The term implies either abandonment or nonoccupancy for any purpose. **4.** (Of a job or position) unfilled and hence available for application by prospective employees.

*vacantia* (və-kan-sh[ee]-ə). See *bona vacantia* under BONA.

*vacantia bona* (və-kan-sh[ee]-ə boh-nə). See *bona vacantia* under BONA.

**vacant succession.** See SUCCESSION (2).

<mark>**vacate,** *vb.* (17c) **1.** To nullify or cancel; make void; invalidate <the court vacated the judgment>. Cf. OVERRULE. **2.** To surrender occupancy or possession; to move out or leave <the tenant vacated the premises>.</mark>

*vacatio* (və-kay-shee-oh). *Civil law.* Exemption; immunity; privilege; dispensation.

**vacation,** *n.* (15c) **1.** A worker's paid leave of absence from work, esp. for the purpose of taking an annual holiday. — Also termed *annual leave.* **2.** The act of vacating <vacation of the office> <vacation of the court's order>. **3.** The period between the end of one term of court and the beginning of the next; the space of time during which a court holds no sessions. ● The traditional vacations in England were Christmas vacation, beginning December 24 and ending January 6; Easter vacation, beginning Good Friday and ending Easter Tuesday; Whitsun vacation, beginning on the Saturday immediately before and ending the Tuesday

immediately after Whitsunday (i.e., Pentecost, the seventh Sunday after Easter); and the long vacation, beginning August 13 and ending October 23. **4.** Loosely, any time when a given court is not in session. **5.** *Eccles. law.* The act or process by which a church or benefice becomes vacant, as on the death or resignation of the incumbent, until a successor is appointed. — Also termed (in sense 5) *vacatura.*

**vacation barrister.** See BARRISTER.

*vacatur* (və-kay-tər), *n.* [Law Latin "it is vacated"] (17c) **1.** The act of annulling or setting aside. **2.** A rule or order by which a proceeding is vacated.

*vacatura* (vay-kə-t[yoor-ə), *n.* [Latin] VACATION (5).

*vacua possessio* (**vak-yoo-ə pə-zes[h]-ee-oh**). [Latin "a vacant possession"] (17c) *Roman & civil law.* Free and unburdened possession, which a seller must convey to a purchaser.

**vacuum abortion.** See *aspiration abortion* under ABORTION.

*vacuus* (vak-yoo-əs), *adj.* [Latin] *Hist.* Empty; void; vacant; unoccupied.

*vades.* See VAS.

*vadiare duellum* (vad-ee-air-ee d[y]oo-el-əm), *vb.* [Law Latin "to wage the duellum"] *Hist.* To give pledges mutually for engaging in trial by combat.

*vadiare legem* (vad-ee-air-ee lee-jəm), *vb.* [Law Latin "to wage law"] *Hist.* (Of a defendant in a debt action) to give security to make one's law on a day assigned — that is, the defendant would pledge, upon giving the security, to do two things on the appointed day in court: (1) take an oath in open court that the debt was not owed, and (2) bring 11 compurgators who would swear that they believed what the defendant said.

*vadiatio* (vad-ee-ay-shee-oh), *n.* [Law Latin] *Hist.* Wager. Cf. INVADIATIO. Pl. *vadiationes* (vad-ee-ay-shee-oh-neez).

  ▸ *vadiatio duelli* (vad-ee-ay-shee-oh d[y]oo-el-ɪ). [Law Latin "wager of battle"] See TRIAL BY COMBAT.

  ▸ *vadiatio legis* (vad-ee-ay-shee-oh lee-jis). [Law Latin "wager of law"] See WAGER OF LAW.

*vadimonium* (vad-ə-moh-nee-əm), *n.* *Roman law.* **1.** A guarantee (originally backed by sureties) that a litigant would appear in court. **2.** A solemn promise to this effect. — Also termed *vadimony.*

*vadium* (vay-dee-əm), *n.* [Law Latin "pledge, bail, security"] *Hist.* **1.** Security by a pledge of property.

  ▸ *vadium mortuum* (vay-dee-əm mor-choo-əm). [Law Latin "dead pledge"] (18c) A mortgage. ● This was considered a "dead pledge" because an estate was given as security by the borrower, who granted to the lender the estate in fee, on the condition that if the money were not repaid at the specified time, the pledged estate would continue as the lender's — it would be gone from, or